[S. F. No. 12122. In Bank.—April 30, 1929.]

CHARLES W. BARRETT, Respondent, v. SOUTHERN PACIFIC COMPANY (a Corporation), Appellant.

156

Ford, Johnson & Bourquin, Dozier & Kimball and Guy V. Shoup for Appellant.

James F. Brennan, John J. McMahon and William F. Herron for Respondent.

SHENK, J.—This is an appeal from the judgment on a verdict in favor of the plaintiff in an action for damages for personal injuries.

The appeal was originally taken to this court. It was transferred to the district court of appeal for hearing and determination. The plaintiff moved in that court to dismiss the appeal or affirm the judgment on the ground that the defendant had failed to comply with the requirements of section 953c of the Code of Civil Procedure with reference to printing in the appellant's brief or in a supplement appended thereto the portions of the record desired to be called to the attention of the court. The motion was granted and the judgment affirmed. On petition for hearing in this court it appeared that sufficient of the record had been incorporated in the appellant's opening brief to raise some if not all of the vital points of law in the case, and the hearing was granted. When the cause was called for oral argument in this court the matter before us, strictly speaking, was the motion of the plaintiff to dismiss or affirm the judgment on the grounds stated in the plaintiff's notice of motion. By stipulation of the parties, however, the cause was argued and submitted on its merits. The defendant in the meantime had by leave of court filed an extensive supplement to its brief. Under the circumstances no further notice will be taken of the motion to dismiss or affirm.

Between four and five miles northwesterly from the city of Santa Barbara the defendant corporation operates a railroad for the carrying of passengers and freight above and across the state highway at a separated grade. The overhead bridge is in two spans, each extending from the outer stone abutments to a stone pier erected in the center of the highway. This pier is about five and one-half feet in width, twenty feet long and is V-shaped at the ends. The bridge is known as the Hollister Avenue bridge No. 365E and was constructed by the defendant's lessor in

1899. It crosses the highway diagonally and the highway approaches thereto are through a cut and on a curve. The highway, however, is straight for a distance of 240 feet easterly from the pier. The paved portion of the highway in this vicinity is regularly twenty feet in width, but from a point about 200 yards from the bridge the highway begins to widen. Immediately at the bridge it is thirty-four feet wide. Beneath it the spans are approximately fourteen feet in width.

On August 30, 1924, at about 8:30 o'clock P. M., the plaintiff and Herbert D. Phelps left Santa Barbara northbound in a Davis sedan owned by the plaintiff. Phelps was driving the car and the plaintiff was riding in the front seat at the right of the driver. As they left Santa Barbara and approached the bridge a dense fog, such as usually occurs in that section at night in the months of July and August, was encountered. The car was equipped with a movable spot-light on the right side. The plaintiff testified that he manipulated the spot-light and trained it on the outer right-hand edge of the highway so as to avoid leaving the pavement. Phelps testified that because of the fog on the windshield he peered out of the left front window to observe his course in driving. Both testified that when they reached the bridge they were traveling from twelve to fifteen miles per hour and that the fog was so dense that it appeared like a fog wall and obscured their vision for any considerable distance ahead, although they could see the headlights of automobiles approaching from the opposite direction. Phelps testified that he could not see ahead more than a few inches beyond the radiator cap. It was in evidence beyond dispute that there were no danger signals on the approach to the pier and that the pier was gray in color and was not equipped with any red lights or other signal of danger. Phelps further testified that he was unable to see the pier because of the fog and because the pier was about the same color as the fog. The middle front end of the car struck the pier. The car was not overturned, but the front end thereof was impinged upon the V-shaped end of the pier. The impact threw the plaintiff forward into the shattering windshield, from which position he rebounded into the front portion of the car, thereby receiving serious injuries. So far as

the record shows, the driver Phelps was not seriously injured.

In his amended complaint the plaintiff alleged that the overhead bridge and the pier were constructed and at all times mentioned in the complaint were maintained by the defendant corporation; that the pier constituted a public nuisance by reason of the fact that the defendant erected and maintained it unlawfully and without a permit from the board of supervisors of Santa Barbara County; that the pier obstructed the highway and impeded, endangered and interfered with traffic along the highway and that the defendant was negligent in that no light or warning signal of any kind was maintained by it on or near the pier. The plaintiff alleged general damages in the sum of $65,000 and special damages in the sum of $2,800.

The answer to the amended complaint denied that the overhead bridge and pier were constructed by the defendant corporation and alleged that they were constructed in 1899 by the Southern Pacific Railroad Company under the authority of and in compliance with sections 465 and 472 of the Civil Code and that, thereafter, on June 26, 1902, the structure, together with other railroads and railroad property was leased to the defendant on a fixed yearly rental, but that under said lease agreement the defendant "did not expressly agree to maintain but did expressly agree to operate said railroads." Other allegations of the complaint were denied. The answer also pleaded the affirmative defense of contributory negligence on the part of the plaintiff. The jury returned a verdict in favor of the plaintiff in the sum of $67,700.

In support of the appeal it is contended that the construction and maintenance of the pier were duly authorized by law and that the defendant was not guilty of any negligence in connection therewith. Our attention is directed to subdivision 5 of section 465 and to section 472 of the Civil Code. Section 465 defines the powers of railroad corporations. In subdivision 5 it is provided that such corporations shall have power to "construct their roads across, along or upon any . . . highway . . . in such manner as to afford security for life and property; but the corporation shall restore the . . . highway . . . to its former state of usefulness as near as may be, or so that the

railroad shall not unnecessarily impair its usefulness or injure its franchise." Section 472 provides that "Whenever the track of such railroad crosses . . . a highway, such railroad or highway may be carried under, over, or on a level with the track, as may be most expedient . . . "

The foregoing code sections constitute authority for the construction and maintenance of the railroad across the highway in question. No authority in this state has been cited which would prevent the construction and maintenance under the authority of these code sections of a pier in the middle of the highway as a support for the overhead bridge, provided the terms of the statute be complied with, viz., that the construction be accomplished "in such manner as to afford security for life and property" and that the highway be restored "to its former state of usefulness as near as may be." The existence of the pier in question did not therefore constitute a public nuisance within the meaning of the cases relied upon by the plaintiff. (*Lewiston Turnpike Co.* v. *Shasta & W. W. R. R. Co.*, 41 Cal. 562; *Marini* v. *Graham*, 67 Cal. 130 [7 Pac. 442]; *Voorhies* v. *Tidewater Southern Ry. Co.*, 41 Cal. App. 315 [182 Pac. 797].) ▆ But while the construction and maintenance of the bridge and pier appear to have been authorized by statute, yet we think a question of fact was presented in this case whether the pier was maintained in such manner as to afford security for life and property. The prevalence of heavy fogs at night in this section in July and August was established by government records and local observations for many years. This climatic or atmospheric condition would seem to have required a color scheme or painting on the pier different from the grayish color of the fog. This was not done, at least before this accident. Then, too, the installation of red lights or other danger signals on or near the pier as a warning to travelers along the highway would seem to have been required in the exercise of ordinary care. In the absence of these precautions we think it was a question of fact for the jury to determine whether the maintenance of the pier in its condition on the night of the accident was negligence on the part of the defendant.

▆ It is insisted by the defendant that the order of the Railroad Commission (General Order No. 26, effective

January 1, 1913), adopted pursuant to the provisions of the constitution and statutes relating to powers of that commission (Const., sec. 23, art. XII; Public Utilities Act, secs. 42, 43, Stats. Ex. Sess. 1911, pp. 39, 40), authorized the maintenance of the pier in its condition at the time of the accident. The order provided in part as follows: "Railroads . . . which cross above . . . public highways . . . shall have a minimum side clearance when two or more spans are used, each of twelve feet." This order was undoubtedly promulgated in recognition of the fact that railroads in this state were maintaining and might thereafter construct and maintain bridges of two or more spans above and over public highways, and the pier in question was maintained in full compliance with the side clearance requirement. But it is clear that compliance with the order relied upon did not and could not operate to authorize the noncompliance with section 472 of the Civil Code or to permit the negligent maintenance of the pier. The terms of the order of the Railroad Commission were not at all inconsistent, but were in harmony with the constitution and laws relating to the regulation of public utilities.

It is also contended by the defendant that as lessee of the Southern Pacific Railroad Company it was and is not liable for any damage which might occur from the negligent maintenance of the pier and that if any corporation is liable therefor it is the lessor. We think the state of the pleadings and the evidence sufficiently establish the responsibility of the defendant for the proper maintenance of the pier. The lease was in evidence. By its terms the defendant undertook to operate the leased railroads and to apply the earnings and income derived from such operation in part to the maintenance of the railroad property. By the provisions of the lease, if not in express terms at least by reasonable and necessary implication, the lessee engaged to maintain such pier with suitable protection to the public. The fact that the lessor might be liable under certain circumstances as held in *Lee* v. *Southern Pac. R. R. Co.*, 116 Cal. 97 [47 Pac. 932], *Johnson* v. *Southern Pac. R. R. Co.*, 154 Cal. 285 [97 Pac. 520], and similar cases, is beside the question when, as here, the lessee is properly found to be liable. The

lease in evidence was executed by virtue of legislative authority (Stats. 1880, p. 21). In such case the general rule is that the lessee company, within the terms of the lease, is liable as if it were operating the road as owner. (1 Elliott on Railroads, 3d ed., p. 711.)

The answer to the original complaint denied that the defendant unlawfully or negligently maintained said pier. Thereafter the answer to the amended complaint was filed, in which the denial pregnant with the admission of maintenance was omitted. The negative pregnant in the original answer was offered and received in evidence over the defendant's objection, and the ruling thereon is urged as error. Assuming, without holding, that the denial of the superseded answer was erroneously received in evidence, its inclusion in the record was harmless for the reason that there was other sufficient evidence of the maintenance of the pier by the defendant, including the evidence of the defendant's supervisor of bridges, called as a witness on behalf of the plaintiff, who testified that the defendant kept up and maintained in repair the railroad bed over the defendant's lines from Los Angeles to San Francisco, including the Hollister Avenue bridge.

We are not persuaded that the trial court erred in admitting in evidence the opinions of experts as to the possibility, feasibility and practicability of constructing the Hollister Avenue bridge with a single span over the highway, or in refusing to admit evidence of the construction of bridges over other highways with center abutments. The evidence received was pertinent to the question of whether there had been a compliance with the provisions of section 465 of the Civil Code, and the fact that other bridges in the state were similarly constructed had no legitimate bearing upon the status of this particular bridge.

The defendant presents a very forceful argument on the question of the alleged contributory negligence of the plaintiff as matter of law. Attention is drawn to evidence of the fact that the plaintiff had driven an automobile under this same bridge at least twice before and had ridden thereunder several times in busses; that the fogs were so dense as to require the utmost caution in proceeding along the highway and that the wrecked condition of the automobile as it was impaled on the end of the pier is a demon-

stration beyond cavil of the excessive rate of speed at which the car was traveling under the circumstances. It appeared from the testimony of the plaintiff that he was, just prior to the accident, manipulating the spot-light attached to the car, endeavoring thereby to assist in guiding the automobile so that it would not run off the paved shoulder of the highway at the right. At the time of the impact the right wheels of the car must have been at least twelve feet from the right-hand edge of the pavement. This position of the car on a twenty-foot highway would place the left wheels of the car very near the edge of the pavement at the left. But we think that in the absence of a vehicle approaching from the opposite direction or of an observed or observable obstruction ahead, this position of the automobile on the highway may not be said to establish negligence on the part of the plaintiff as matter of law. The driver of the car was watching the highway in front and at the left. From the left he might have considered himself well on the proper side of the highway if the same had been of the ordinary width at that point. The entire situation presents a close question of fact on the issue of contributory negligence. If reasonable precautions had been taken to install on the pier or otherwise provide a warning of danger it would be difficult to escape the conclusion that the negligence of the plaintiff proximately contributed to his injuries. But on the record it cannot be said that the question of the alleged contributory negligence of the plaintiff was not properly one for the jury.

At the request of the plaintiff the court gave an instruction that if the jury should "find by a. preponderance of the evidence in this case that the maintenance of said pier as a support to said bridge was not authorized or permitted by any law of the state of California, as alleged in the complaint, I then instruct you that in maintaining said pier said defendant corporation was *prima facie* guilty of negligence." Objection is made to this instruction as reversible error on the ground that the court thereby left the question to the jury whether the law authorized the maintenance of a pier in the center of the highway. Also at the request of the plaintiff the court further instructed the jury that "Anything which unlawfully obstructs the free passage or use, in the customary manner, of any highway, is a nui-

sance," and that "nothing which is done or maintained under express authority of a statute can be deemed a nuisance."

Counsel for the plaintiff presented the case to the court and jury on two theories: First, that there was and is no authority in law for the maintenance of a pier in the center of a public highway and that therefore the maintenance of the pier in question was a public nuisance under section 3479 of the Civil Code and section 370 of the Penal Code, in which case it was and is argued the defense of contributory negligence would not lie (citing *Tognazzini* v. *Freeman*, 18 Cal. App. 468 [123 Pac. 540]), and the defendant would be liable as an insurer (citing *Stockton Auto Co.* v. *Confer*, 154 Cal. 402 [97 Pac. 881]); and, secondly, that the maintenance of the pier, if lawfully authorized, but maintained in its condition at the time of the accident without lights or other warning signals, was negligence on the part of the defendant. The court instructed the jury at length on the second theory of the case, that is to say, that it was the duty of the defendant "to use ordinary care to notify or warn, by signals, lights, or otherwise, all persons traveling along or on said highway, of the existence of said obstruction in said highway; and if you find by a preponderance of the evidence in this case that plaintiff was injured, as alleged in plaintiff's complaint, by driving his automobile into and colliding with said obstruction; and if you further find by a preponderance of the evidence that at the time of colliding with said obstruction said plaintiff was using ordinary care and due care and caution, under all the circumstances at the time of said collision, for his own protection; and if you further find by a preponderance of the evidence that said defendant corporation did not use ordinary care to warn and notify said plaintiff of said obstruction in said highway; and if you further find by a preponderance of the evidence that the said failure, if any, to notify or warn said plaintiff of said obstruction in said highway was the sole and proximate cause of the injuries to said plaintiff, then I instruct you that it is your duty to find in favor of plaintiff in such amount as will compensate said plaintiff for the detriment, if any, caused by said injuries, if any."

But on the first theory of plaintiff's counsel the question of law therein presented was left entirely to the jury's notion of what the law was or ought to be on the subject, namely, whether the maintenance of the pier was or was not authorized or permitted by any law of the state of California, and that if the jury should find "by a preponderance of the evidence" that the maintenance of the pier was not lawfully authorized, said unlawful maintenance by the defendant was *prima facie* proof of negligence. The court also left to the jury the determination of whether or not the pier was an unlawful obstruction in the highway and therefore a public nuisance as defined by section 370 of the Penal Code. Whether or not the original construction and subsequent maintenance of such a pier in a public highway was legally authorized was a question of law for the court to determine. Under the instructions of the court that question was submitted to the jury for determination, and that, too, "by a preponderance of the evidence." Whether or not this particular pier was negligently maintained at the time of the accident was properly a question for the jury. All of the jurors, or more than three of them, may have concluded that the maintenance of the pier in question was not authorized or permitted by any law of the state of California and that the defendant was guilty of negligence for that reason. Likewise, some of them may have concluded that the pier when constructed was in full compliance with section 465 of the Civil Code and the maintenance of such a pier, with due regard for the security of life and property, was legally authorized, but that the defendant was guilty of negligence in the maintenance of this pier in its condition at the time of the accident. It is impossible from the record to determine upon which of the two theories the jury found the defendant guilty of negligence. Some of them may have found against the defendant on the one and erroneous theory and the remaining jurors may have reached the same conclusion on the other theory. It cannot be said that the same verdict would have been reached if the jury had been correctly instructed. Under such circumstances the erroneous instruction was prejudicial. (See *Ginochio* v. *San Francisco*, 194 Cal. 159 [228 Pac. 428]; 24 Cal. Jur., p. 864, and cases cited.)

It may not reasonably be questioned that the original construction of the pier in 1899 was then legally authorized for the reason that, under conditions prevailing at the time of horse-drawn vehicles and dirt roads, the highway was restored to its former state of usefulness. In fact, it would seem to be generally accepted that a separation of the grade was a distinct advantage over a grade crossing which might then have been installed. Even in these days of swiftly driven motor vehicles and paved highways it might be said that the separated grade with the pier in the center is more conducive to the security of life and property than a grade crossing at the point, provided the motor traveling public be properly warned of the presence of the pier. The only question, therefore, to be left to the jury would be whether the defendant had at the time of the accident provided safeguards or signals to warn users of the highway of the presence of the pier sufficient to relieve itself of liability as against a charge of negligence.

Finally, the defendant contends that the damages are excessive. It appeared in evidence that the plaintiff, at the time of the accident, was forty-three years of age, and that his expectancy was then twenty-six years. His earnings from his business were about $2,500 per year. The amount of such income multiplied by the number of years of his expectancy equals the sum of $65,000, which was the amount of general damages prayed for in the complaint and allowed by the jury in its verdict. The additional amount in the verdict was made up in response to proof of expense for nurses, doctors, hospital, incidental expenses and damage to the automobile. There is no question as to the very serious and permanent disability suffered by the plaintiff. The defendant offered no evidence in an endeavor to minimize it. The extent of the injuries need not be recounted other than to say that the evidence shows permanent impairment to the plaintiff's knee which has resulted in some limitation of motion, and permanent partial paralysis of the tongue which interferes with the proper mastication and swallowing of food and also causes considerable embarrassment when the plaintiff dines in public. There is no sufficient evidence that the plaintiff is so disabled as to be incapacitated from engaging in some gainful occupation. A comparison of the evidence with the verdict convinces us

that the jury was moved by considerations foreign to the evidence in arriving at the amount of $67,700 in the verdict. If the judgment could otherwise be affirmed we would feel compelled to reduce the amount thereof. To what extent it is unnecessary to say for the reason that the cause must go back for further proceedings because of prejudicial misdirection of the jury.

The judgment is reversed.

Waste, C. J., Curtis, J., Seawell, J., Richards, J., Preston, J., and Langdon, J., concurred.

Rehearing denied.