Grafton,
Feb. 6, 1934.

JOHN HAYES, *Adm'r*

*v.*

NEW ENGLAND TELEPHONE AND TELEGRAPH COMPANY.

*Murchie, Murchie & Blandin (Mr. Alexander Murchie* orally), for the plaintiff.

*Demond, Woodworth, Sulloway & Rogers (Mr. Franklin Hollis* orally), for the defendant.

BRANCH, J.   At about 9:30 in the evening of December 22, 1931, an automobile operated by the decedent upon the road between Enfield and Canaan and in the town of Canaan, came into collision with a telephone pole maintained by the defendant, which stood about three feet from the edge of the tarred surface of the road.   The car, of the type known as a coupé, was found, with the decedent unconscious therein, on the right-hand side of the road, with the left-hand door destroyed and the pole imbedded in its left side at a point opposite the driver's seat.   The road was icy and slippery at the time. The negligence of which the plaintiff complained was that the pole in question was set too close to the traveled part of the road.

Although there was no evidence upon the point, it was conceded by the plaintiff at the trial that the defendant's pole line "was located in accordance with governmental authority" which must be construed to mean under a valid license, and the defendant contends that since the pole was lawfully erected it cannot be charged with negligence upon the sole ground of improper location.   The soundness of this position must be tested by an examination of the statutory provisions applicable thereto.

The statute by authority of which, we must assume, the defendant's pole line was erected reads as follows:

"2.   *Locating.*   Such person or corporation shall petition the selectmen of the town through which the line will pass to locate the route thereof and grant a license therefor.   The selectmen may grant a license for such time as they deem expedient, may from time to time change the terms and conditions thereof, and may revoke it whenever the public good requires.   They shall fix and state therein the size and location of such poles and structures, the distances between them, the number of wires to be used, and their distance above or below the surface of the highway . . . ."

"4.   *Interference with Travel.*   No poles, structures or wires shall be so placed as to interfere with the safe, free and convenient use of any highway for public travel, or of any private way leading therefrom to adjoining land or buildings, or with the use of such land or buildings, or so as to interfere with any other similar structure."   P. L., c. 97, ss. 2, 4.

"These provisions were designed to regulate and control the use made of highways for such purposes, so that such use will not unduly interfere with the other public uses to which the highways are dedicated."   *American Loan &c. Co.* v. *Company*, 71 N. H. 192, 200.

In support of its argument that "the license is conclusive as to the [proper] location of the pole," the defendant seeks to establish two propositions: first, that the license must have specified the exact location of the pole in question because section 2 of the statute above quoted required that it do so, and, second, that the judgment of the defendant's agents as to the proper location of the pole was thus superseded by that of the selectmen of Canaan, for whose errors the defendant is not responsible.

It is unnecessary to consider the soundness of the first contention, for even if the statute required the license to specify accurately the location of each pole erected in pursuance of it, the conclusion would not follow as a matter of law that the defendant was thereby absolved from liability for harm caused by the pole in question if it was in fact set in a spot where it constituted a danger to public travel.

On the contrary, liability on the part of the owner for the improper location of poles would seem to follow as a necessary corollary from the provisions of P. L., c. 97, s. 4, above quoted. This section provides that "no poles . . . shall be so placed as to interfere with the safe, free and convenient use of any highway for public travel . . . " The violation of an express statutory provision, such as this, ordinarily carries with it civil liability to any persons injured by the creation of a danger which the statute was designed to prevent (See *Flynn* v. *Gordon, ante,* 198) and such was the construction placed upon this section in *McCaffrey* v. *Company,* 80 N. H. 45, 46. The court there said: "In accepting this location the defendants assumed the burden imposed by section 4 of the same chapter that 'no poles, structures, or wires shall be so placed as to interfere with the safe, free and convenient use of any highway for public travel'. As this duty is imposed upon the defendants by statute, it is unnecessary to refer to authorities declaring the obligation of those lawfully maintaining in public ways wires for the transmission of electricity to exercise care for the safety of the traveling public."

We see no reason to doubt the correctness of this interpretation. The suggestion of the defendant that "Section 4 is simply a direction to the selectmen" involves a strained construction of the language of the act which we decline to adopt.

Final confirmation of the views above set forth is found in sections 15 and 16 of the same act (P. L., c. 97) which provide as follows:

"15. *To Indemnify Town.* The proprietors of every line of wire strung in a highway shall indemnify the town against all damages, costs and expenses to which it may be subjected by reason of any in-

sufficiency or defect in the highway occasioned by the presence of the wires and their supports therein."

"16. *To Party Injured.* They shall also be responsible directly to any party receiving injury in his person or estate from the wires or their supports, or from the use thereof by the proprietors."

The meaning of section 16 seems extremely clear. The statement that the proprietors of every line of wires strung in a highway shall be responsible to every party receiving injury from the wires or their supports would ordinarily require no elucidation. Some confusion has arisen, however, because of the fact that sections 15 and 16 were originally a single section of the Public Statutes (P. S., *c.* 81, *s.* 16) in regard to which this court made the following observations: "The second sentence gives to the person injured a direct action against the defendant instead of requiring recovery of the town and action over. As recovery could not be had against the town without proof of the town's default, it is not probable it was intended to make the defendants, who answered over, liable directly if without fault." *Lambert* v. *Company,* 80 N. H. 126, 130.

Basing their argument upon these statements, counsel for the defendant contend that the only party primarily liable for harm caused by the improper location of poles in a highway is the town; that the proprietors are liable only as indemnitors of the town; that direct proceedings are permitted against them only to avoid circuity of action; and that since the town could not be held liable under the facts of this case (P. L., *c.* 89, *s.* 1) the defendant is similarly immune from liability.

The *Lambert* case does not sustain this argument. Nowhere in that decision is it stated that the defendant was liable only as indemnitor of the town. On the contrary, the court clearly recognized two distinct bases of liability, namely: (1) Liability of the town upon "proof of the town's default," in regard to which the defendant must answer over, and (2) direct liability of the defendant to the person injured upon proof of the defendant's fault. Clearly section 16 imposes upon the proprietors of poles something more than an indemnitor's liability for the default of the town, since they are made responsible not only for injury caused by "the wires or their supports," but also for that caused by "the use thereof by the proprietors" for which the town would not be responsible at all.

The provisions of the original act of 1881 from which the present law was derived (Laws of 1881, *c.* 54) shed light upon the meaning of the section here involved. Section 10 of that act read as follows:

"Nothing herein contained shall exempt any such proprietors from liability for any unlawful entry, trespass, or damage already made or committed, nor from any liability or damage that may occur from want of care or from negligence in erecting or maintaining such poles, structures, or wires." Here was a plain provision that the proprietors should be liable for the results of their own negligence in erecting poles despite the fact that they were acting under a license from the selectmen.

The revision of 1891 was apparently designed to enlarge rather than to restrict the liability here imposed. Section 10 of the act of 1881 was accordingly omitted in chapter 81 of the Public Statutes and a new section was inserted by the revising commission which has now become sections 15 and 16 of chapter 97 of Public Laws above quoted. This section enlarged the liability of proprietors (1) by requiring them to indemnify towns against any loss which they might sustain by reason of poles and wires in highways, and (2) by substituting for the negative language of the act of 1881 a positive obligation to respond for all injuries resulting from "the wires or their supports or from the use thereof by the proprietors."

We, therefore, conclude that the liability of the defendant for harm caused by the location of its poles is not only the indirect obligation of an indemnitor for the town, but the direct responsibility of one who negligently maintains a structure in a highway in such a manner as to endanger public travel thereon. The defendant's license had the effect of removing its poles from the category of nuisances which they would otherwise occupy. P. L., c. 97, s. 11. Its obligation to use due care in their location and erection was not affected by it. "In the exercise of the easement assumed to have been granted to it, the defendant was bound to do all that a reasonable man would do to protect the rights of others. This is the common-law rule and the statute provides that the company shall 'be responsible directly to any party receiving injury in his person or estate from the wires or their supports or from the use thereof by the proprietors'. P. S., c. 81, s. 16." Peaslee, J., dissenting, in McCaffrey v. Company, 80 N. H. 45, 50, 51.

Such being the state of the local law, the cases cited by the defendant from Massachusetts where a different rule prevails, of which Curran v. Railway, 249 Mass. 55 is an example, are not in point.

The issue of the defendant's negligence in setting its pole within three feet of the edge of the traveled portion of the road was properly submitted to the jury. It seems too plain for argument that an ob-

ject beside a highway becomes more dangerous to travelers as its distance from the line of travel decreases. This truism has received frequent recognition in the decisions of this court where the position of objects near the line of travel has been stressed as indicating the need for protection. *Willey* v. *Portsmouth*, 35 N. H. 303, 314; *Davis* v. *Hill*, 41 N. H. 329, 335; *Stack* v. *Portsmouth*, 52 N. H. 221, 223; *Knowlton* v. *Pittsfield*, 62 N. H. 535, 536. Photographs of the pole in question which were exhibits in the case disclose a situation which would at once strike an impartial observer as dangerous. The testimony of the defendant's agents that poles fifteen feet from the traveled portion of a road are struck by automobiles quite as frequently as those within three feet was, of course, inconclusive. Under these circumstances, in this jurisdiction, the question of the defendant's care was for the jury, although it may be true that elsewhere similar questions have been decided favorably to defendants as a matter of law. See *Gulfport &c. Co.* v. *Manuel*, 123 Miss. 266; *Bailey* v. *Company*, 131 N. Y. S. 1000.

The suggestion that the presence of the pole was merely a condition and not a proximate cause of the accident hardly merits notice. Upon this theory, no one could ever be held liable for an injury caused by an obstruction in a highway.

The argument that the decedent was guilty of contributory negligence as a matter of law is equally without merit. There were no witnesses to the accident and the decedent died without recovering consciousness. The burden of proving his negligence rested upon the defendant (P. L., *c.* 328, *s.* 13) and in the absence of evidence of his conduct there would be no issue even for the jury to pass upon (*Roberts* v. *Lisbon*, 84 N. H. 266, 269), much less for the court to decide as a matter of law.

The motions for a nonsuit and a directed verdict were properly denied.

The court charged the jury as follows: "The plaintiff here is seeking to recover under a statute which provides that any person or corporation, except municipal corporations, through whose negligence or carelessness any obstruction is caused upon any highway, shall be liable to any person injured by reason thereof." P. L., *c.* 89, *s.* 1. To this instruction the defendant excepted upon the ground that this statute "has no application to the facts of the case." It is now argued that the section above referred to "contemplates the placing of an unlawful obstruction" and since the pole in question was lawfully erected, it could not be found to be an obstruction within

the meaning of the law. From what has been said above it is plain that this position is untenable.

Defendant's other exceptions have not been argued but have been examined and appear to be without merit.

*Judgment on the verdict.*

WOODBURY, J., did not sit: the others concurred.

ON REHEARING. After the foregoing opinion was filed, the defendant moved for a rehearing.

*Demond, Woodworth, Sulloway & Rogers (Fred C. Demond* by brief), for the motion.

*Murchie, Murchie & Blandin,* opposed.

BRANCH, J. In support of its motion for a rehearing, the defendant argues as follows:

(1) That as an incident to the granting of a license, the statute requires selectmen "to determine the question of safe location."

(2) That in so doing, they act "solely in a judicial capacity."

(3) That a license fixing the location of poles is, in effect, a "declaratory judgment" establishing the safety of each pole location.

(4) That this judgment is conclusive against all persons and utterly precludes a finding of negligent location.

(5) That "the non-interference and tort liability provisions" of the statute (*ss.* 4 & 16) do not alter the situation.

(6) That the Massachusetts decisions demonstrate the soundness of the foregoing conclusions.

Each of these propositions may be briefly noticed.

(1) We are told that one of the "real questions" in the case is "whether the statute means what it says in requiring the selectmen to determine the question of safe location." The defendant does not strengthen its position by calling attention in this pointed way to the language of the statute, for nowhere in the act do we find any provision which, in terms, requires that the selectmen shall "determine

the question of safe location," or any requirement of similar import. If the scope of their functions is to be determined by what the statute "says", then their duty to determine this question is non-existent. We must conclude that in stating the question in the above form, counsel made a sacrifice of accuracy in the interest of vigorous expression.

It may be assumed that in performing their statutory duty to "fix ... the size and location of such poles" selectmen will be guided largely by considerations of comparative safety. Yet it does not follow that permission to erect a pole in a given spot in a highway is equivalent to a finding that a pole in that location will cause no danger to travelers. Situations may readily be called to mind in which the location of telephone poles in busy city streets necessarily increases the hazards of locomotion. The public good may, nevertheless, justify or demand the granting of permission to erect poles in such locations. There is no reason, however, to assume that under such circumstances the conduct of the selectmen in issuing the necessary license involves a judicial finding that the obvious danger will not result. It would hardly be argued that the order of selectmen laying out a highway involves a finding of fact that all the curves, grades, embankments and bridges along the proposed route will be safe for public travel or that the action of municipal authorities in laying out a street railway involves a finding that no danger to other users of the highway will result from its operation.

It might properly be held that any company availing itself of such a license in the erection of poles, acts at its own risk and not that of the traveling public. When, as in this case, a statute specifically provides that "no poles ... shall be so placed as to interfere with the safe, free and convenient use of any highway for public travel," the conclusion becomes more imperative. When another section of the statute further provides that the proprietors shall be responsible "to any party receiving injury in his person or estate from the wires or their supports" (P. L., c. 97, s. 16) it becomes well nigh irresistible. "The statute indicates an intention on the part of the Legislature, that these erections in the street, which in many places would constitute a public nuisance if not authorized by the statute, should be permitted only upon condition that those who use them to their own profit should make compensation for damages caused by them." *Riley* v. *Company*, 184 Mass. 150, 152-153.

(2) In support of its position that selectmen, in performing their statutory duty to fix the size and location of poles and other struc-

494

tures, act solely in a judicial capacity, the defendant quotes the following language from the case of *Parker-Young Company* v. *State*, 83 N. H. 551, 558: "Whatever may be the extent of the selectmen's powers under P. L., c. 97, in the exercise of such powers the selectmen act solely in a judicial capacity, and in the performance of their judicial duties are bound to act impartially upon the evidence submitted upon any petition thereunder when it shall be presented." With reference to the questions then under consideration, this language was accurate enough. The court was there dealing with the duty of selectmen to pass upon an application for a license to erect poles along a particular route, and under all the decisions of this court it is plain that they act in a judicial capacity when determining whether such a petition shall be granted or denied. *Meredith* v. *Fullerton*, 83 N. H. 124, 129; *Locke* v. *Laconia*, 78 N. H. 79 and cases cited. The sweeping language above quoted, however, does not involve a denial of the broader principle that the same tribunal may perform various functions which must be classified according to their essential nature as legislative, administrative or judicial.

The test of judicial action which has long been recognized in this state was stated in *Sanborn* v. *Fellows*, 22 N. H. 473, 488-489, as follows: "It is not necessary that a magistrate or board should act formally as a Court, or that they should be usually so denominated or considered. If they are bound to notify, and hear the parties, and can only decide after weighing and considering such evidence and arguments, as the parties choose to lay before them, their action is judicial." With reference to the fixing of pole locations and the other details of construction specified in section 2 of the statute here involved, it does not appear that judicial action, as above defined, is required. The defendant concedes that the license need not specify accurately the location of poles "with the inflexible exactness of an engineer's plan" and that a license fixing minimum distances "from the edge of the improved roadway" within which poles might be set would satisfy the statute. In other words, the statute contemplates general regulations with reference to the location of poles rather than accurate locations upon the ground for individual poles. The framing of general rules to govern the conduct of different kinds of business is one of the commonest forms of legislation by municipal bodies, and it would seem that in this instance the statute imposes upon selectmen and boards of mayor and aldermen duties which are essentially legislative in character. The location and erection of poles in any city may properly be the subject of a municipal ordinance, and an

examination of the authorities in other jurisdictions indicates that this is the way in which regulation is usually accomplished.

The distinction between the power to authorize the construction of pole lines, and the subordinate power to regulate such construction when authorized, was clearly pointed out in the case of *Barhite* v. *Company*, 50 App. Div. 25, 32 as follows: "When a corporation of this kind is to avail itself of the legislative grant, the manner of its exercise, the location of its poles, the stringing of its wires, etc., are within the control and regulation of the local legislative body. That is one of the police functions committed to the municipality. This right of regulation is, however, entirely distinct from the original granting of the privilege. It is subordinate to that right."

In *Marshall* v. *Bayonne*, 59 N. J. L. 101, under a statute similar to ours which required the common council to give to a company applying for a pole location "a writing" which "shall designate the streets in which their posts or poles shall be placed and the manner of placing the same." G. S., (New Jersey), *p.* 3459, *s.* 15. The court said: "The ordinance complained of, designating as it does the streets in which the company shall place its poles and the manner of erecting the same, meets every requirement of the statute." In *State* v. *Milwaukee*, 132 Wis. 615, when dealing with a similar situation, the court said: "The company having this franchise, subject only to such police regulation, has a right to have prescribed, and the municipality owes a duty, upon proper application, to prescribe, such restrictions and regulations as it deems necessary. In prescribing the same of course there is a broad field of legislative discretion which may be exercised, but the discretion is limited to that which is reasonably necessary and is consistent with the purpose of the general law . . . ." To the same effect are *Conrad* v. *Railway*, 240 Ill. 12, and *Carthage* v. *Company*, 185 N. Y. 448.

It is true that in Massachusetts the courts have held that selectmen, in framing regulations of this kind, do act judicially. No authority from any other jurisdiction has been cited in which such a rule prevails, nor has any come to our attention, and it would appear that the Massachusetts rule is peculiar to that jurisdiction. It is not necessary for us to decide finally in this case whether, under our statute, the selectmen, in framing regulations for the construction of pole lines, act in the same capacity as when passing upon applications for licenses of various kinds, but we do not wish it to be understood that the broad language used by the court in the case of *Parker-Young Company* v. *State, supra,* is subject to no qualifications.

(3) The foregoing considerations demonstrate the fallacy of the defendant's next position, that a license fixing and regulating the location of a pole line, is, in effect, a "declaratory judgment" establishing the safe location of each pole placed in accordance therewith. As indicated above, comparative safety is only one of the factors which may properly enter into the consideration of a board authorizing the construction of a telephone line. If a license partakes at all of the nature of a judgment, it is only a judgment to the effect that poles located in accordance therewith shall not be nuisances *per se*. If any expression of opinion on the part of selectmen with reference to the question of safety can be spelled out of such a license, it would be to the effect that any pole located less than the minimum distance from the edge of the traveled way was unsafe. *Non constat* that poles located outside that minimum would, in every instance, be safe.

Under these circumstances, it is unnecessary to discuss the application of the well known rule that "a prior adjudication is not conclusive as to matters which can only be inferred by argument from the judgment." 2 Black, Judgments, (2d *ed.*) s. 612; *Duchess of Kingston's Case*, 20 How. St. Trials, 355, 538; *Metcalf* v. *Gilmore*, 63 N. H. 174; *Chesley* v. *Dunklee*, 77 N. H. 263.

(4) The idea that the action of municipal authorities in granting licenses to erect obstructions in public highways, bars a recovery by any person injured by the mere presence of such an obstruction, again appears to be peculiar to the state of Massachusetts. The same contention has often been made and overruled in other jurisdictions and is contrary to the general rule prevailing elsewhere, which has been stated as follows: "If the company has a license from a city to construct its poles on the streets, they will not be declared a nuisance, but if they clearly appear to be improperly located thereon, and injury results therefrom, the company will be liable notwithstanding that it has a license from the city to construct its poles in such places. . . . ." Jones, Telegraph & Telephone Companies, (2d *ed.*) s. 196. To the same effect is Keasby, Electric Wires, (2d *ed.*) s. 225, where it is said: "It is no doubt true that a person setting up a pole in the street without due regard for the safety of the public in the ordinary use of a street may be liable for injuries directly caused by the presence of the pole, even though he may have had permission or even authority to erect the pole for a certain proper purpose. The liability arises out of the neglect of the precautions required by the conditions of public travel, and exists because the grant is made either expressly or by implication subject to the requirements of public

safety in the use of the streets." The following cases support the general rule above stated. *Cleveland* v. *Railway*, 86 Me. 232; *Bevis* v. *Company*, 121 Ky. 177; *Wolfe* v. *Company*, 33 Fed. Rep. 320; *Sheffield* v. *Company*, 36 Fed. Rep. 164; *Watts* v. *Company*, 100 Va. 45; *Alice &c. Tel. Co.* v. *Billingsgate*, 33 Texas Civ. App. 452; *Wells* v. *Company*, 40 N. S. 81; *Bonn* v. *Company*, 30 Ont. 696; *Little* v. *Company*, 213 Pa. St. 229; *Phelps* v. *Commissioners*, 117 Md. 175; *Pacific Tel. & Tel. Co.* v. *Hoffman*, 208 Fed. Rep. 221; *Sheldon* v. *Company*, 51 Hun 591; *Wilson* v. *Company*, 41 La. Ann. 1041.

The Ontario case of *Bonn* v. *Company, supra*, is worthy of special notice by reason of its intelligent discussion of the essential questions here involved, in which the contrary decisions in Massachusetts are referred to.

(5) It is suggested in the motion that our construction of section 4, which counsel have christened "the non interference" provision of the statute, was based merely on "passing *dicta* in the wholly different case of *McCaffrey* v. *Electric Company*, 80 N. H. 45." While the language used in the *McCaffrey* case was reaffirmed in the previous opinion, the interpretation of the statute therein contained was adopted, not in deference to a binding prior adjudication, but because the language there used aptly expressed our present view of the meaning of the act. It may now be pointed out that the conclusion heretofore reached is in accord with the great weight of authority elsewhere. *Bevis* v. *Company*, 121 Ky. 177; *Bonn* v. *Company*, 30 Ont. 696; *Phelps* v. *Commissioners*, 117 Md. 175; *Little* v. *Company*, 213 Pa. St. 229; *Pacific Tel. & Tel. Co.* v. *Hoffman*, 208 Fed. Rep. 221; *Sheldon* v. *Company*, 51 Hun 591; *Wilson* v. *Company*, 41 La. Ann. 1041.

The defendant appears to be ill-advised in protesting against our construction of section 16 of the statute, which is referred to as the "tort liability" provision, while at the same time urging us to be guided by the Massachusetts decisions upon the general questions here involved. A search of the Massachusetts decisions could hardly fail to reveal the case of *Riley* v. *Company*, 184 Mass. 150, where, under statutory provisions very similar to those of section 16, but applicable only to telegraph companies, the court held that the statute imposed an absolute liability on a telegraph company irrespective of negligence. We adhere to the construction of our statute heretofore announced.

(6) We are told that "the licensing statute of 1881 was evidently modeled after the similar Massachusetts legislation which had then

been in force as to telegraph lines for over thirty years" and that we should, therefore, follow the Massachusetts decisions construing the legislation in that state upon the principle "that when one state substantially adopts legislation of another, a construction already ... given it by the highest court of the state of origin is ordinarily presumed to have been adopted also, unless a contrary intention is expressed." With reference to this suggestion, it should be said, in the first place, that there is no apparent reason for the defendant's assumption that the New Hampshire statute of 1881 was modeled after the Massachusetts legislation then in force. The Massachusetts plan of requiring a license from the local authorities as a prerequisite to the construction of pole lines was by no means unique at that date. "Many of these statutes, or constitutions, which give telegraph, telephone, and electric companies the right to construct lines of wires upon the streets of cities provide that this right shall not be exercised without first obtaining the consent of the municipality." Jones, Telegraph & Telephone Companies, (2d *ed.*) *s.* 82. As an example of other legislation then in force, reference may be made to a very similar statute in New Jersey, dealing with telegraph companies (Revision of N. J., *p.* 1174) which was construed in the case of *American Union Tel. Co.* v. *Harrison*, 31 N. J. Eq. 627 (1879).

Even if it were to be assumed, however, that the New Hampshire statute was modeled after the Massachusetts legislation, the defendant's position would not be improved. The original Massachusetts act, "concerning electric telegraph companies and electric telegraphing," was passed in 1849, and provided that the selectmen of towns "shall give said companies their writing, specifying where the posts may be located, the kind of posts that may be used, the height at which, and the places where, the wires may be run." Mass. St. 1849, *c.* 93, *s.* 3. This statute contained no provision whatever for tort liability to persons injured by poles or other apparatus of a telegraph company. This defect was remedied in 1851 by an act which provided as follows: "Whenever injury shall be done to any person, or to the building or other property of any person or corporation, by the posts, wires, or other apparatus of any telegraphic line, the company or individual, being proprietor of the same, shall be held responsible in damages to the person or corporation so injured." Mass. St. 1851, *c.* 247, *s.* 2.

These were the statutes in force when the case of *Young* v. *Yarmouth*, 9 Gray 386, cited by the defendant, was decided in 1857. That case, as defendant points out, "related to municipal rather than

proprietary responsibility" for damages caused to a highway traveler by the presence of a telegraph pole, and the court held that the provisions of the statute of 1849 "clearly indicate the selection of a legally constituted board to adjudicate upon this subject, with full powers to revise their doings, and correct any errors which the practical working of the first specification and arrangements as to the location of such posts may seem to require. The members of this tribunal do not act as agents of the town in this matter, but for the public generally, and must in the discharge of their duties give effect to the requirement of the statute that the posts should not be so placed as to incommode the public use of the highway.  ...  The town cannot interfere and remove them; and their existence upon the highway, if in exact conformity with the regulations prescribed by the selectmen, does not constitute any defect or want of repair in the highway, for which the town can be held responsible in case of any injury thereby occasioned to any person travelling on such highway."  To this interpretation of the statute the court of Massachusetts has ever since adhered, but to correct the result of that case, the Massachusetts legislature, in 1859, passed an act providing as follows: "Towns which may be otherwise liable in damages to any person for injury to his person or property, occasioned by telegraphic posts or other fixtures erected on highways or town ways, shall not be deemed to be discharged from such liability by reason of the place of erection of said posts or other fixtures having been designated by the selectmen of such towns, in virtue of the act to which this is in addition, or by reason of any thing in said act contained." Mass. St. 1859, c. 260, s. 1.

The substance of the acts of 1851 and 1859 was incorporated in Massachusetts General Statutes of 1860, s. 11, which was in force when the case of *Commonwealth* v. *Boston,* 97 Mass. 555, was decided in 1867.  This case held that the city of Boston was not subject to indictment for suffering one of its highways to be obstructed by wooden posts erected by a domestic telegraph company, on the theory that they constituted a public nuisance, although the city was held liable in that instance because the poles in question had been erected by a foreign telegraph company to which the protection of the statute did not extend.  It was held that the specifications of the municipal authorities determining the kinds and locations of the posts of a telegraph company in a highway are conclusive upon the rightfulness of their erection, so that they cannot be treated in any manner as a public nuisance.  This decision is quite in accord with the opinion heretofore filed in this case.

It should be noted that in neither of the Massachusetts cases above mentioned was the question of proprietary responsibility for injury caused by the faulty location of telegraph poles involved nor was there any occasion to pass upon the effect of the statute of 1851 imposing liability for injuries so caused in unqualified terms.

Such was the state of Massachusetts law when our statute of 1881 was adopted, and the defendant's argument simply comes to this, that the New Hampshire legislature must be held to have adopted the construction of the Massachusetts statute announced in the case of *Young* v. *Yarmouth, supra,* although the legislature of Massachusetts had made haste to indicate its disapproval of the result reached in that case. We are further asked to hold that the effect of the reasoning in that case was to emasculate the statute of 1851 by confining the liability there imposed to cases in which injury resulted from faulty construction and maintenance as distinguished from faulty location of telegraph poles, in spite of the evidence of the Massachusetts law furnished by the later decision of *Riley* v. *Company,* 184 Mass. 150, above referred to. We are not impressed by the strength of this argument and decline to follow it.

All the other Massachusetts cases cited by the defendant were decided under statutes which contained no provision for tort liability resulting from obstructions placed in public ways under license. *Curran* v. *Railway,* 249 Mass. 55; *Sawyer* v. *Railway,* 243 Mass. 469; *Washburn* v. *Easton,* 172 Mass. 525.

*Former result affirmed.*

All concurred.