[L. A. No. 14528. In Bank.—December 31, 1935.]

GEORGE C. GERBERICH et al., Appellants, v. SOUTHERN CALIFORNIA EDISON COMPANY, LTD., Respondent.

Harold A. Jones and Leonard E. Thomas for Appellants.

Roy V. Reppy and E. W. Cunningham for Respondent.

Thos. J. Straub and W. H. Spaulding, as *Amici Curiae* on Behalf of Respondent.

THE COURT.—A hearing was granted in this case in order to give further consideration to the contention of defendant that it could not be deemed negligent in maintaining its power pole in a location approved by public authority. We are now satisfied with the conclusion reached by the District Court of Appeal, and hereby adopt the following opinion of Mr. Justice Scott *pro tempore,* as part of the opinion of this court.

"Plaintiffs sued to recover damages for alleged wrongful death of their daughter. At conclusion of the testimony the trial court directed the jury to return a verdict in favor of defendant, and from judgment entered thereon plaintiffs appeal.

"At about 9:30 o'clock on a Sunday evening in midsummer deceased was riding with a young man in the rumble seat of an automobile driven by one Renne. The party consisted of two couples from seventeen to nineteen years of age, on their way to the beach. They proceeded south on Alameda street to a point opposite the intersection of Gage avenue (which latter street was not cut through on the west side of Alameda where the accident occurred), and there collided with a pole erected and maintained by defendant in the dirt portion of the highway, causing injuries which resulted in the death of deceased.

"Alameda street consisted of a concrete pavement twenty-four feet wide, flanked on each side by a two-foot strip of macadam and unpaved the balance of the width of the highway, which was a total of forty feet except for an added twenty-foot strip on the west side, starting at a point opposite

the north curb of Gage avenue and extending about 120 feet south. The pole was 1.3 feet in diameter and its center was placed six feet from the edge of the concrete, or four feet from the edge of the macadam shoulder, and slightly north of a point opposite the prolongation of the south curb of Gage avenue. The pole was black, unmarked and bore no light. It was a 'junction pole', erected to support wires running north and south on Alameda and east on Gage.

"There was evidence that the dirt portion of the road, including the twenty feet additional width at that point, was frequently traversed on both sides of the junction pole when traffic was somewhat congested. The nearest street light was at the next corner. The pole could ordinarily be seen at night by a driver going south, when within twenty-five to thirty feet of it. North of the pole a few feet was a post painted white and bearing a sign to direct motorists entering Alameda from Gage avenue.

"As Renne's car, going south, approached the intersection of Gage avenue he swung to the left to pass another southbound car. As he came abreast of it a third car entered Alameda from Gage, making a left turn to go south. To avoid hitting this third car Renne swung back sharply to the right, then to the left and back to the right, running onto the dirt shoulder on the west side of Alameda and going about forty feet ahead on the dirt until he hit the pole.

"Motion for directed verdict in favor of defendant was granted on the following grounds: 'First: That the evidence shows no negligence on the part of the defendant Southern California Edison Company. Second: That the evidence shows, without conflict, that the death of plaintiffs' daughter was caused solely by the negligence of the driver of the car in which she was riding. Third: That the evidence shows, without conflict, that the defendant maintained the pole that was struck under an easement that was superior to the right of the public to use Alameda street as a public highway, and that any use of that street as a public highway by the deceased, or by the driver of the car in which she was riding, was subject to defendant's right to maintain this pole at the place where it was located, and that, in so far as her death resulted from the automobile striking the pole, such a collision was in the nature of a trespass upon the property of this defendant, to-wit: the pole, at the place

where the defendant had the unqualified right to maintain the pole. Fourth: That the evidence shows, without conflict, that the defendant was in the ownership and exercise of a franchise granted by the County of Los Angeles, permitting it to maintain poles along the county highways of said county, and that the pole struck by said Renne was maintained under and in accordance with the terms of said franchise, and therefore affords a complete defense to this action.'

■ " 'A directed verdict may be granted "only when, disregarding conflicting evidence and giving to plaintiff's evidence all the value to which it is legally entitled, herein indulging in every legitimate inference which may be drawn from that evidence, the result is a determination that there is no evidence of sufficient substantiality to support a verdict in favor of the plaintiff if such a verdict were given". . . . Unless it can be said as a matter of law that, when so considered, no other reasonable conclusion is legally deducible from the evidence, and that any other holding would be so lacking in evidentiary support that a reviewing court would be impelled to set it aside as a matter of law, the trial court is not justified in taking the case from the jury.' (*Estate of Flood*, 217 Cal. 763, at page 768 [21 Pac. (2d) 579].)

■ "Evidence was presented showing that predecessors in interest of defendant had run lines over this land as early as 1904, the street being dedicated in 1907. A franchise was later obtained by defendant from the county of Los Angeles, and it was stipulated that they operated under it. The franchise provided among other things that in the maintenance of defendant's equipment 'no part of said system or the appliances or attachments thereto shall be so located as to interfere with the use of the highway for travel'. While it appears that the defendant under the franchise was lawfully entitled to run its lines over part of the highway, there is nothing in the evidence nor in the cases cited which would support its suggestion that it was enjoying its easement by virtue of a right 'superior to the easement of the public for highway purposes'. The question of law as to whether defendant was legally authorized to install and maintain such a pole could properly be determined by the court; but the issue as to whether or not the pole was being negligently

maintained at the time of the accident was properly a question of fact for the jury. (*Barrett* v. *Southern Pacific Co.*, 207 Cal. 154 [277 Pac. 481].) ■ We cannot say as a matter of law that defendant was not negligent in the manner in which it maintained the pole, nor is it within our province to express an opinion as to the finding of fact which the jury might make on this issue. (See *Stewart* v. *San Joaquin L. & P. Co.*, 44 Cal. App. 202 [186 Pac. 160], and *Lim Ben* v. *Pacific G. & E. Co.*, 101 Cal. App. 174 [281 Pac. 634].)

■ "The questions whether the driver Renne was negligent and whether such negligence if any proximately caused the accident, are likewise for the jury. When 'an injury was caused both by the continuing negligent act of one defendant and the independent concurring negligent act of a third person, many facts are to be considered in determining the proximate cause (45 C. J. 897–925)', and 'Whenever the standard of duty is not fixed and there is introduced substantial evidence on the subject of proximate cause, it is a question for the jury'. (*Lacy* v. *Pacific G. & E. Co.*, 220 Cal. 97 [29 Pac. (2d) 781].) ■ 'Where the original negligence continues and exists up to the time of the injury, the concurrent negligent act of a third person causing the injury will not be regarded as an independent act of negligence, but the two concurring acts of negligence will be held to be the proximate cause of the injury.' (*Lacy* v. *Pacific G. & E. Co.*, *supra*.)

"Since the questions as to the negligence, if any, of defendant and of Renne, and as to whether either or both constituted the proximate cause of the accident and the death of deceased, were matters of fact which the jury should determine, the motion for a directed verdict should have been denied and the case submitted for their determination."

■ It was vigorously contended by defendants and *amici curiae* that a public utility has by virtue of its franchise a superior easement in the place where it locates its poles, and that it cannot be held liable for doing what the law permits it to do. This argument is already answered in the above opinion. The public permission, it is true, precludes any characterization of the pole as a nuisance; it is lawfully there and cannot be abated. But though not a nuisance, it may by reason of its location or maintenance without warn-

ing signs, lights, guards or other precautions, constitute a danger to traffic; and if the danger is sufficiently great, and it can be avoided by the exercise of reasonable care, either in relocation or the placing of effective warning devices or guards, then the jury might find negligence in the failure to take such steps.

This proposition, and the authorities which support it, will be found fully discussed in the recent case of *Hayes* v. *New England Tel. & Tel. Co.*, 86 N. H. 486 [174 Atl. 49], where the collision occurred with a telephone pole standing three feet from the edge of the tarred surface of a road. The court said (174 Atl. 54): "The idea that the action of municipal authorities in granting licenses to erect obstructions in public highways bars a recovery by any person injured by the mere presence of such an obstruction, again appears to be peculiar to the state of Massachusetts. The same contention has often been made and overruled in other jurisdictions and is contrary to the general rule prevailing elsewhere, which has been stated as follows: 'If the company has a license from a city to construct its poles in the streets, they will not be declared a nuisance, but if they clearly appear to be improperly located thereon, and injury results therefrom, the company will be liable, notwithstanding that it has a license from the city to construct its poles in such places.' (Jones, Telegraph & Telephone Companies [2d ed.] s. 196.) To the same effect is Keasby, Electric Wires (2d ed.), s. 225, where it is said: 'It is no doubt true that a person setting up a pole in the street without due regard for the safety of the public in the ordinary use of a street, may be liable for injuries directly caused by the presence of the pole even though he may have had permission or even authority to erect the pole for a certain proper purpose. The liability arises out of the neglect of the precautions required by the conditions of public travel and exists because the grant is made either expressly or by implication, subject to the requirements of public safety in the use of the streets.' "

A number of cases cited by defendants as establishing a contrary doctrine appear upon examination to be clearly distinguishable. Thus, in *Waldorf* v. *Alhambra*, 6 Cal. App. (2d) 522 [45 Pac. (2d) 207], there was an ordinary raised concrete curb and sidewalk and the car mounted the curb. And in *Fiechter* v. *City of Corbin*, 254 Ky. 178 [71 S. W.

(2d). 423], the court pointed out that the street was adequately lighted and the pole easily observable; that the vision of the driver of the car was impaired by water on the windshield, which he could have discovered and eliminated by the exercise of ordinary care. The opinion nevertheless recognizes the general rule that where a pole is located in too close proximity to the traveled portion of the highway, and the driver is free from contributory negligence, recovery may be justified.

The judgment is reversed.

THOMPSON J., Dissenting.—I dissent.

It appears beyond question that the pole maintained by respondent in the instant case was one of a line of poles located six feet from the paved portion of the highway and that, had they been moved farther from the highway, the cross arms and wires would have been above private property. The accident happened on a clear night, when the paved portion of the street was clearly distinguishable from the unpaved part. Under such circumstances, it was the duty of the trial judge to direct a verdict for the defendant. The rule stated in *Waldorf* v. *City of Alhambra*, 6 Cal. App. (2d) 522 [45 Pac. (2d) 207], and supported by the authorities therein cited, is to the effect that the pavement, parkways and poles constitute a barrier or warning to the alert driver. I think the rule is founded in common justice and should be applied in this case. Negligence cannot be predicated upon the location of light or telephone poles off and away from the highway, where reasonable men would not anticipate the presence of vehicular or other traffic.

Shenk, J., concurred.

Rehearing denied. Shenk, J., Thompson, J., and Conrey, J., voted for a rehearing.