[L. A. No. 4596. In Bank.—June 13, 1919.]

MERTA MANN, Respondent, v. DE WITT SCOTT et al., Appellants.

[1] NEGLIGENCE — CROSSING OF CITY STREET — DUTY OF PEDESTRIAN.— There is no positive duty to stop, look, and listen when a pedestrian is about to cross a city street.

[2] ID.—ORDINARY CARE OF PEDESTRIAN — EXAMINATION IN LIGHT OF ATTENDING CIRCUMSTANCES.—The question of negligence, under the usual rule of ordinary care that devolves upon foot-travelers, must be examined in the light of all the attendant circumstances, one of which may be the knowledge of the existence of a statute or an ordinance prescribing certain fixed regulations for observance by automobile drivers.

[3] ID.—PERSONAL INJURIES—COLLISION OF AUTOMOBILE WITH PEDES- TRIAN—CONDUCT OF PLAINTIFF—QUESTION FOR JURY.—In an action for damages for personal injuries sustained by a pedestrian on a city street from being struck by an automobile while attempting to board a street-car, it was a question for the determination of the jury as to whether plaintiff in observing the approach of the automobile was warranted in relying upon a compliance by defend- ant with the requirements of an ordinance of the city requiring automobiles traveling behind street-cars to stop ten feet in the rear of the cars when they stopped to take on or let off passengers.

[4] ID.—PASSING OF STREET-CAR BY AUTOMOBILE — MUNICIPAL ORDI- NANCE—STATE MOTOR VEHICLE ACT—INSTRUCTION.—In such action, there was no error in giving an instruction embodying the regula- tory provisions of a city ordinance that an automobile traveling behind a street-car should stop ten feet in the rear of the car when the car stopped to let off or take on passengers, on the theory that the State Motor Vehicle Act of 1913 was controlling upon the sub- ject, which only requires that the driver of an automobile in pass- ing a street-car shall operate the vehicle with due care and caution and shall bring it to a full stop if reasonably necessary to the safety of passengers alighting from or boarding such street-car, since such ordinance is not inconsistent with the state law.

[5] MUNICIPAL CORPORATIONS — POWER TO ENACT ADDITIONAL REGU- LATIONS TO STATE LAWS.—Where the legislature has assumed to regulate a given course of conduct by prohibitory enactments, a municipality with subordinate power to act in the matter may make such new and additional regulations in aid and furtherance of the purpose of the general law as may seem fit and appropriate to the necessities of the particular locality and which are not in themselves unreasonable.

[6] MOTOR VEHICLE ACT — EXTENSION OF OPERATION TO CITY STREET TRAFFIC—PURPOSE OF LEGISLATURE.—The legislature by extending the operation of the Motor Vehicle Act in terms to the traffic upon city streets did no more than to prescribe obviously necessary safeguards for travel upon such streets viewed as part of the public highways of the state in which all of the people of the state are essentially interested, and it did not thereby intend to prohibit the enactment of such new and additional police regulations in furtherance of the purpose of the act as might appear reasonable and proper in a given locality.

[7] ID.—RIGHT OF PLAINTIFF TO RECOVER—INJURIES FROM VIOLATION OF ORDINANCE—INSTRUCTION.—In such action, an instruction to the effect that if the jury believed defendants violated the ordinance and that "by reason thereof" plaintiff sustained injuries, then they should find for the plaintiff, if they should further find that at the time the plaintiff was in the exercise of reasonable care with regard to her own safety, was not prejudicially erroneous, where from the instructions as a whole it was shown that the jurors were fully advised as to the necessity for finding that plaintiff's injuries resulted from defendants' conduct as the proximate cause thereof.

APPEAL from a judgment of the Superior Court of Los Angeles County. Grant Jackson, Judge. Affirmed.

The facts are stated in the opinion of the court.

Rufus V. Bowen and Duke Stone for Appellants.

Shepard, Olm & Swenson for Respondent.

LENNON, J.—The facts upon which this appeal is based are stated in the opinion of Mr. Justice Finlayson, presiding in the district court of appeal, second appellate district, division two. We adopt that opinion in part as follows:

"While crossing from the sidewalk to where was standing a street-car that she intended taking, plaintiff was struck by an automobile owned by defendant Scott and driven by his chauffeur, defendant Layman. She brought the action to recover damages for the personal injuries thus occasioned. Verdict and judgment were for plaintiff. From the judgment and order denying their motion for a new trial defendants appeal. The injury occurred shortly after 9 o'clock in the evening, in the city of Los Angeles, on Main Street, which runs approximately north and south, and at the intersection of that thoroughfare with Republic Street. Appellants' main

contentions are: (1) That the court erred in not granting their motion for a nonsuit, in that, so it is claimed, respondent's case shows contributory negligence; (2) That, for the same reason, the evidence is insufficient to sustain the verdict; and (3) That the court committed prejudicial error in giving certain instructions to the jury.

"1. We cannot say that, as a matter of law, respondent was guilty of contributory negligence—that is, that 'all the facts plainly and inevitably point to such negligence, leaving no room for argument or doubt.' (*Bailey* v. *Market Street Ry. Co.*, 110 Cal. 328, [42 Pac. 914].) As is usual in such cases, there is a sharp conflict between the several witnesses. There was evidence, however, to support the following facts: Immediately prior to the accident respondent had stopped to mail a letter in a mail-box on the west side of Main Street, at the northwest corner of the intersection of that thoroughfare with Republic Street. It was her purpose to board a south-bound Main Street car, which she saw coming toward her from the north. The automobile and the street-car were both traveling on Main Street in the same direction. As respondent stepped up to the box to drop her letter she noticed the street-car stop. It had stopped on the near side of the crossing, upon a signal given by two persons who wished to board the car. Just before dropping the letter respondent glanced up, looked toward the north, saw the street-car coming and started for it. She testified that, as she glanced up and saw the car approaching, there was nothing else in sight; that, as she stepped from the sidewalk, there was no automobile or other vehicle in sight; that as she stepped off the sidewalk she looked to see if the street was clear—to see if anything was coming—and then started for the street-car, which, in the meantime, had stopped on the near side of the crossing, directly opposite the spot where she stepped from the sidewalk. Asked on cross-examination which way she was looking as she stepped from the curb, plaintiff replied that she did not know, but that she supposed she was looking directly toward the street-car, which had stopped just as she mailed the letter. She intended boarding the car at its front-end entrance. When she left the sidewalk she did not again look to see if any automobile was coming. After taking two or three steps from the curb, and when about four feet from the sidewalk, she was struck down and injured by appellants'

automobile, which, coming toward her from the north, was traveling abreast of the street-car, and between it and the sidewalk. The place where the street-car had stopped was the usual stopping place. As the motorman brought his car to a stop to permit the passengers to enter, he saw the headlight of appellants' automobile flash upon respondent. This caused him to look back. As he did so he saw appellants' automobile to his right, opposite about the middle of his car, still traveling, and going at a speed of between eight and twelve miles an hour. When the automobile came to a stop its rear wheel was about directly opposite the front entrance of the street-car. The street-car had come to a stop just as the automobile reached the rear end of the car. For a short distance north of the intersection of Main and Republic Streets, the street-car was traveling ahead of appellants' automobile. Defendant Layman, who was driving the automobile, testifies that, before reaching the intersection, the street-car was ahead of him; that there was a machine or two parked along the sidewalk on Main Street; that there was no room to pass between the machines and the car; that he wanted the street-car, which was traveling very slowly, to run on; and that he ran on slowly behind the car until he had passed the machines parked along the sidewalk, when he swung his automobile beside the street-car and ran along beside it at about twelve miles an hour. It will thus be seen that the jury may well have been justified in finding that the driver of the automobile, while traveling in the same direction as the street-car, saw the car slow down to permit the entrance of passengers, and instead of bringing his automobile to a stop behind the car when it stopped, continued on his course, intending to pass the car as it stood waiting for passengers, as he doubtless would have done had he not collided with the respondent.

"Appellants contend that, before leaving the sidewalk to board the street-car as it stood in Main Street opposite her, respondent, as a matter of law, was in duty bound to look toward the north to see if any automobile was approaching, and further, that, had she so looked, she necessarily must have seen appellants' on-coming automobile, and that, therefore, her testimony that she did look and saw no automobile is not enough to support a verdict in her favor—citing in support of this contention *Chrissinger* v. *Southern Pacific Ry. Co.,* 169 Cal. 619, [149 Pac. 175]—an action against a steam rail-

way company. . . .  **[1]**  There is no positive duty to stop, look, and listen when a pedestrian is about to cross a city street. . ... ( . . . *Blackwell* v. *Renwick,* 21 Cal. App. 131, [131 Pac. 94] ; . . . *Clark* v. *Bennett,* 123 Cal. 275, [55 Pac. 908].) [Compare, also, *Scott* v. *San Bernardino Valley Traction Co.,* 152 Cal. 604, 610, [93 Pac. 677.] **[2]** The question of negligence, under the usual rule of ordinary care that devolves upon foot-travelers, must be examined in the light of all the attendant circumstances, one of which may be knowledge of the existence of a statute or an ordinance prescribing certain fixed regulations for observance by automobile drivers. And it may be that if the jurors in this case rejected, as improbable, respondent's testimony that she looked and saw no approaching automobile, they, nevertheless, concluded—as well they might—that if she did see the automobile before leaving the sidewalk, she reasoned that its driver would comply with the city ordinance, referred to in .the court's instructions, requiring an automobile traveling behind a street-car to stop ten feet in the rear of the car if it stops to let off or take on passengers, until the passengers have safely alighted from or boarded the car.  **[3]**  Whether, if she saw the automobile, respondent would have been warranted in going toward the street-car without further watching the automobile approach, relying upon a compliance by the appellants with the requirements of the ordinance, was a question upon which men's minds might well differ, and hence it was properly a case for the jury. . . .

"2. Neither can we hold that there was not sufficient evidence to justify the jury in finding that appellants were guilty of negligence.  The evidence was such that this question was wholly within the province of the jury.  [*Scott* v. *San Bernardino Valley Traction Co., supra.*]

"3. We see no reason for reversing the judgment on account of any alleged prejudicial error in the matter of instructions.  The court substantially in the language of the Motor Vehicle Act [of 1913 (Stats. 1913, p. 639)], instructed the jury to the effect that automobiles approaching an 'intersecting street shall be under the control of the operator; that it shall be the duty of the operator, when overtaking another vehicle, to sound an audible and suitable signal before passing; and that the driver of an automobile, when passing street-cars operated in the city, shall operate his automobile

'with due care and caution, so that the safety of passengers alighting from or boarding such street-car shall be protected, and for that purpose said vehicle shall be brought to a full stop, if reasonably necessary to obtain his object.' The court, substantially in the language of the ordinance above referred to, likewise instructed the jury as follows: 'If you believe . . . that the defendant Layman was in the employ of the defendant Scott, and was driving his automobile . . . in a southerly direction on Main Street at or near the intersection of Republic Street . . . and that . . . a street-car was proceeding in a southerly direction on said Main Street; that the said street-car had stopped . . . for the purpose of permitting passengers to alight therefrom, or to board the same; and that the defendant Layman violated the ordinance of the city of Los Angeles prescribing and directing that the driver of an automobile must stop the same at least ten feet in the rear of such street-car . . . until such passengers, or intended passengers, have . . . boarded said street-car . . . and that the defendant Layman failed and neglected to so stop said automobile, . . . but proceeded to pass the street-car in violation of said ordinance, and that by reason thereof plaintiff sustained injuries, *then you should find for plaintiff*—if you further find that at that time the plaintiff was in the exercise of reasonable care with regard to her own safety.' It is not disputed that, at the time of the accident, there was an ordinance of the city of Los Angeles prescribing regulations substantially as set forth in the instruction last quoted. It is, however, contended: (1) That the State Motor Vehicle Act is the controlling law upon the subject and that it was error to give an instruction embodying the regulatory provisions of the city ordinance; (2) That an instruction on both the state law and city ordinance, where they are distinct and independent declarations of law, is error; and (3) That, instead of instructing that a violation of the ordinance, when the proximate cause of the injury, is *negligence,* the court erroneously instructed the jury, in absolute terms, that, if appellants violated the ordinance in the particular designated, and if, by reason thereof, plaintiff sustained injuries, *'then you should find for plaintiff.' "*

[4] Upon a careful reconsideration of the appellants' contention that the State Motor Vehicle Act of 1913 is the controlling law upon the subject and that it was error to give an

instruction embodying the regulatory provisions of the city ordinance, we are constrained to confirm the opinion of the district court of appeal that the municipal ordinance in the respect noted was not inconsistent with the state law, but was valid and operative in the city of Los Angeles at the time of the plaintiff's injury. And this, we think, is so regardless of the question of whether or not the regulation of the traffic upon the streets of a city is a "municipal affair." Conceding that if there were in fact a conflict between the ordinance and the Motor Vehicle Act, the state law would prevail, still we find no conflict or inconsistency between the two enactments. The state law requires that a motor vehicle be operated with due care and caution when it overtakes a street-car which is stopping on a city street to receive or discharge passengers, and further provides that the vehicle shall be brought to a full stop if reasonably necessary for the safety of such passengers. The municipal ordinance requires that the vehicle shall in all cases be stopped at a distance of ten feet in the rear of the stopping street-car. The ordinance certainly does not attempt to make lawful the performance of any act forbidden by the state law. It follows that a conflict, if any, can exist only upon the theory that the ordinance prohibits that which is affirmatively authorized by the Motor Vehicle Act. In short, the appellants are placed under the necessity of contending that that act affirmatively authorizes motor vehicles to pass a stopping street-car in a city whenever the apparent risk involved in so doing would not deter an ordinarily prudent and careful driver. We do not so construe the statute. [5] Where the legislature has assumed to regulate a given course of conduct by prohibitory enactments, a municipality with subordinate power to act in the matter may make such new and additional regulations in aid and furtherance of the purpose of the general law as may seem fit and appropriate to the necessities of the particular locality and which are not in themselves unreasonable. Mr. Justice Henshaw stated in the case of *In re Hoffman*, 155 Cal. 114, 118, [132 Am. St. Rep. 75, 99 Pac. 517, 519], that the correctness of this principle cannot be doubted. He continues: "If the state should pass a law declaring it unlawful to erect a chimney of a height exceeding one hundred and fifty feet, would anyone seriously contend that a city of the state within the earthquake zone might not by ordinance, in the clear exercise

of police power, for the benefit of its citizens, still further restrict the height of chimneys? Such, in principle, is the present case. The legislature has in effect declared that it shall be unlawful to sell milk containing less than eleven and five tenths per centum solids, three per centum of which solids shall be milk fat. An ordinance of a municipality requiring of the milk vended therein a larger percentage of solids, if not in its exactions unreasonable, does no violence to the law of the state. The state's declaration merely is that milk shall not be sold containing less than eleven and five-tenths per centum of solids, three per centum of which shall be milk fat. If the city of Los Angeles had provided that milk might be vended which contained less per centum of milk fats than that exacted by the state law, there would be presented a plain case of conflict. The municipality would be endeavoring to legalize that which the state had declared to be unlawful. But what the city has in fact done has been to impose not fewer but additional qualifications upon the milk which may be vended to its consumers. The state in its laws deals with all of its territory and all of its people. The exactions which it prescribes operate (except in municipal affairs) upon the people of the state, urban and rural, but it may often happen, and does often happen that the requirements which the state sees fit to impose may not be adequate to meet the demands of densely populated municipalities; so that it becomes proper and even necessary for municipalities to add to state regulations provisions adapted to their special requirements. Such is the nature of the legislation here questioned.''

It is true that in the case of *In re Hoffman, supra,* the state statute therein considered was general in its terms and made no distinction between regulations applicable in urban and those applicable in rural communities, whereas the Motor Vehicle Act makes express provision that certain rules shall apply in business districts, that other rules shall apply in territory which is closely built up and that still different rules shall apply in country districts. But it does not follow that, because the legislature has seen fit to distinguish in the operation of the act between urban and rural communities and to make certain general rules applicable in all of the cities of the state, it has thereby impliedly prohibited the enactment of additional local regulations by municipalities in keeping with the purpose of the general law. The question whether

the legislature has undertaken to occupy exclusively a given field of legislation is, we think, to be determined in every case upon an analysis of the statute and of the facts and circumstances upon which it was intended to operate. Such was the analysis made in the case of *In re Hoffman, supra.* The opinion of this court in *Ex parte Hong Shen,* 98 Cal. 681, 684, [33 Pac. 799, 800], was based upon the same process of reasoning. There it was said:

"Our constitution provides that 'any county, city, town, or township, may make and enforce within its limits all such local, police, sanitary, and other regulations as are not in conflict with general laws.' (Art. XI., sec. 11.) It is claimed by the petitioner that, inasmuch as the legislature has regulated the sale of certain poisons, including opium, by the acts above referred to, it is not within the power of the board of supervisors of the city and county of San Francisco to make another regulation or to prohibit the sale of opium; that an ordinance is in conflict with the general laws when it makes another and different regulation for the sale of an article of commerce than that provided by a statute of the state.

"The soundness of this contention we cannot admit. There may be different regulations without a conflict. . . . So, in the action at bar, the legislature has simply prohibited the sale of opium, and certain other poisons, unless a certain record is kept. It has not directly authorized the sale of opium without the prescription of a physician; it has not legislated upon that subject at all, except in providing that where a physician's prescription is presented no other record need be kept. The city has gone further than the statute and provided that no opium shall be sold without a prescription. While the regulation is different from that of the state there is no *conflict,* and, therefore, it is not in violation of the provision of the constitution quoted above."

Upon a careful analysis of the Motor Vehicle Act of 1913 and of its purpose viewed in the light of the traffic conditions upon which it was intended to operate, we are of the opinion that the reasoning of the court in the case last quoted is decisive of the question now presented. [6] In other words, we believe that by extending the operation of the act in terms to the traffic upon city streets the legislature did no more than to prescribe obviously necessary safeguards for travel upon such streets viewed as part of the public highways of the state

in which all of the people of the state are essentially inter-
ested, and that it did not thereby intend to prohibit the
enactment of such new and additional police regulations in
furtherance of the purpose of the act as might appear rea-
sonable and proper in a given locality. It is true that the
Motor Vehicle Act of 1915 expressly limited the scope of such
police regulations. (Stats. 1915, c. 188, sec. 22d.) It may
perhaps be open to question whether the ordinance here in
controversy falls within the prohibition of that act, but it is
sufficient for the purpose of this case to say that the Motor
Vehicle Act as in force at the time of the plaintiff's injury
did not contain a clause prescribing limitations upon the
local regulation of traffic. Moreover, the very fact that sub-
division "d" was added to section 22 of the Motor Vehicle
Act in 1915 shows, we think, that the construction which we
have placed upon the act as it stood at the time of the plain-
tiff's injury accords with the legislative intent.

The remaining contentions of the appellants are fully and
correctly answered in the remaining portion of the opinion of
Mr. Justice Finlayson which we adopt as follows: "Nor was
it prejudicial error to instruct the jury in the language of
both the state law and the ordinance. Upon this point appel-
lants cite *Sheperd* v. *St. Louis Transit Co.*, 189 Mo. 362, [87
S. W. 1007], where the court enunciated the well recognized
doctrine that where two inconsistent instructions are given,
one declaring the law correctly and the other erroneously,
the one that declares the law correctly does not cure the error
of the other. But here there is no inconsistency between the
specific requirements of the ordinance and the more general
requirement of the state law that the driver of an automobile
passing a street-car 'shall operate the vehicle with due care
and caution,' and shall bring it to 'a full stop if reasonably
necessary' to the safety of passengers alighting from or board-
ing such street-car. The ordinance has simply declared what,
under certain circumstances, shall be necessary to constitute
'due care and caution' for the safety of such passengers.
Furthermore, if, as we hold, the ordinance is operative . . .
appellants were not injured merely because, in another part
of the instructions, the court gave certain of the provisions
of the state law that prescribe for appellants less onerous
requirements.

[7] "We perceive no prejudicial error in the instruction to the effect that, if the jury believed appellants violated the ordinance, 'and that, by reason thereof, plaintiff sustained injuries, *then you should find for the plaintiff*, if you further find that at that time the plaintiff was in the exercise of reasonable care with regard to her own safety.' Assuming that it would have been more consonant with time-honored usage to have told the jury that a violation of the ordinance is *'negligence,'* for which, if such violation was the proximate cause of her injuries, respondent could recover, nevertheless, in the instruction as given the court not only told the jury that respondent herself must be free from contributory negligence, but that, to entitle her to a verdict, they must find, not only that appellants violated the ordinance, but that *'by reason thereof'*—that is, by reason of their violation of the ordinance— 'plaintiff sustained injuries.' By this language the jurors were told, in effect, that they could find for respondent, she being free from contributory negligence, if her injuries were caused by appellants' violation of the ordinance. It was not necessary for the court to add that they could find for respondent if, and only if, appellants' acts were the *'proximate'* cause of her injuries; for, in other instructions given by it, the court fully instructed the jury that, to find a verdict for plaintiff, they must not only find that the defendants were negligent, but 'also' that such negligence was the proximate cause of the injury to the plaintiff,' and likewise instructed the jury as to the meaning of the phrase 'proximate cause.' The instruction complained of, which is one of a series, cannot fairly be torn from its context for criticism. The instructions, as a whole, show that the jurors were fully advised as to the necessity for finding that respondent's injuries resulted from appellants' conduct as the proximate cause thereof."

The judgment appealed from is affirmed.

Shaw, J., Wilbur, J., Olney, J., Lawlor, J., Melvin, J., and Angellotti, C. J., concurred.