[Civ. No. 11820. Second Appellate District, Division Two.—August 23, 1938.]

BERNITA SANDSTOE, Appellant, v. THE ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY (a Corporation) et al., Defendants; THE CITY OF PASADENA (a Municipal Corporation), Respondent.

216

Arthur J. Mullen, Raymond Tremaine and Franklin L. Knox, Jr., for Appellant.

Holbrook & Tarr, as *Amici Curiae,* on Behalf of Appellant.

Harold P. Huls, City Attorney, H. Burton Noble, Assistant City Attorney, and Thomas W. Le Sage, Deputy City Attorney, for Respondent.

THE COURT—Plaintiff appeals from the judgment in favor of defendant City of Pasadena in an action to recover damages for personal injuries, entered after the trial court sustained the city's demurrer to the third amended complaint without leave to amend.

According to plaintiff's allegations, she was riding as a passenger in an automobile being driven in an easterly direction on Walnut Street in the City of Pasadena at 1:30 A. M. on December 24, 1937. The atmosphere was extremely foggy and the automobile collided with a wigwag signal which had been placed by defendant railroad company in the center of Walnut Street near the railroad tracks which traversed the street. The wigwag signal was constructed upon a heavy cement block foundation approximately six feet square at the base and narrowing to approximately two feet square at the top, which is approximately five feet from the surface of the road. The defendant railroad company had not installed equipment to properly illuminate the cement foundation or give warning of the obstruction in the roadway so that oncoming automobiles could observe it in time to avoid striking the cement foundation under any conditions when visibility might be slightly obscured. No red lights were installed upon the foundation. The wigwag "device" was not equipped with lights which could be seen by an approaching motorist under foggy conditions for a distance in excess of ten feet. On the night of plaintiff's injuries the wigwag device, including the cement foundation, was not illuminated in any manner whatsoever so that it would be visible to one approaching from the west.

Plaintiff further alleged that defendant city had placed along the center of Walnut Street a white line for the purpose of designating to motorists the center of the street and that this white line passed through the point whereon the wigwag

signal was located; that the wigwag signal device and the white line thus painted had existed in this dangerous condition for more than one year before December 24, 1937.

It is further alleged in the complaint that on the night in question one Miles Jackson was driving the automobile in which plaintiff was riding easterly on Walnut Street along the white line which had been placed in the center of the street by defendant city with the left front and left rear wheels of his car practically one foot on the north side of the white line for the reason that visibility was impaired due to the extremely foggy atmospheric condition; that said Jackson was attempting to avoid running into any parked unlighted automobiles; and that by reason of being unable to observe the cement foundation he drove the automobile into the signal device, resulting in plaintiff's injuries; that the collision was caused by the negligence and carelessness of the railroad company in maintaining such an obstruction in the center of the street and also by the negligence and carelessness of defendant city in placing the white line through the center of the street without having it deviate from the center of the street in order to warn oncoming motorists that it was unsafe to proceed in a straight direction along the white line.

Plaintiff's cause of action as against defendant city is based upon the Public Liability Act of 1923, which imposes the duty upon a city to maintain its streets in a reasonably safe condition for their use in a proper manner. If in the exercise of its right to maintain streets the city creates a dangerous or defective condition therein it is liable for injuries to persons resulting from such condition provided it had knowledge of such condition and failed or neglected to remedy the condition for a reasonable time after acquiring such notice. "This liability is one for negligence." (*George* v. *City of Los Angeles,* 11 Cal. (2d) 303 [79 Pac. (2d) 723].) As to what constitutes a dangerous or defective condition no hard-and-fast rule can be applied, but each case must depend upon its own set of facts. (*Rafferty* v. *City of Marysville,* 207 Cal. 657 [280 Pac. 118]; *Hook* v. *City of Sacramento,* 118 Cal. App. 547 [5 Pac. (2d) 643].) It has been repeatedly held that as a general rule it is a question for the jury to determine whether a given set of facts or circumstances creates a dangerous or defective condition. (*Nor-*

*ton* v. *City of Pomona,* 5 Cal. (2d) 54 [53 Pac. (2d) 952] ; *Barrett* v. *Southern Pac. Co.,* 207 Cal. 154 [277 Pac. 481] ; *Gerberich* v. *Southern Cal. Edison Co.,* 5 Cal. (2d) 46 [53 Pac. (2d) 948].)

 It is the duty of a city to warn persons lawfully using the street that a dangerous condition exists even if that condition was not created by the city and is beyond its control. (*Shea* v. *City of San Bernardino,* 7 Cal. (2d) 688 [62 Pac. (2d) 365].) In recent years traffic officials have followed the practice of painting white lines on highways to better regulate traffic and insure the safety of motorists. These lines are doubtless of great assistance to drivers, especially on occasions of heavy fog when drivers frequently follow the painted lines. It is a matter of common knowledge that traffic officials follow the practice of painting zigzag lines at places where drivers approach situations of danger. It might be well argued that defendant city should have either painted the line in a zigzag course or should have deviated it to the right at such a distance that drivers following the line would avoid striking the cement obstruction. These matters clearly should be left to the determination of the triers of facts.

 There is no merit in defendant city's contention that it had no notice of the dangerous condition. According to the allegations of the complaint the city created the condition for which plaintiff seeks to hold it liable. Under the decisions it was not necessary for plaintiff to allege further notice. (*Black* v. *Southern Pac. Co.,* 124 Cal. App. 321 [12 Pac. (2d) 981] ; *Wise* v. *City of Los Angeles,* 9 Cal. App. (2d) 364 [49 Pac. (2d) 1122, 50 Pac. (2d) 1079].) Therefore we need not consider the point presented by plaintiff that the dangerous condition existed a sufficient length of time to give constructive notice to the city.

 Counsel for defendant city argue that in order to impose liability upon the city it must be alleged that the city made or suffered to be made the ''complete condition'' which would constitute a dangerous or defective condition under the Public Liability Act. The fact that the railroad company may have improperly maintained the cement foundation does not free the city from liability for locating and maintaining the painted line in a dangerous manner. In *Bosqui* v. *City of San Bernardino,* 2 Cal. (2d) 747 [43 Pac. (2d) 547], the rail-

road commission had ordered the city to maintain a portion of a viaduct over the tracks of the railroad company and had ordered the railroad company to maintain the other portion. "The debris on the roadway over which the Hupmobile passed and the dilapidated timbers of the curbing with which the wheel of the automobile came in contact and mounted were on the portion of the viaduct to be maintained by the Company and the guard rail through which the automobile crashed was on that portion to be maintained by the City under the order of the Railroad Commission." In reversing a judgment of nonsuit the reviewing court said: "In our opinion, where the thing exists which is denounced by the statute, namely, the neglect to remedy a dangerous or defective condition after knowledge thereof, and it proximately causes the injury, the City is liable under the clear meaning of the law despite the existence of another and concurring cause."

 The argument advanced by counsel for the city that plaintiff is precluded from recovery by the conduct of Jackson in driving his car one foot north of the white line is without merit. In *Barrett* v. *Southern Pac. Co.*, 207 Cal. 154, 163 [277 Pac. 481], it is stated: "At the time of the impact the right wheels of the car must have been at least twelve feet from the right-hand edge of the pavement. This position of the car on a twenty-foot highway would place the left wheels of the car very near the edge of the pavement at the left. But we think that in the absence of a vehicle approaching from the opposite direction or of an observed or observable obstruction ahead, this position of the automobile on the highway may not be said to establish negligence on the part of the plaintiff as matter of law." If Jackson had been driving with his car entirely to the right of the white line it could be well argued that the collision nevertheless would have resulted, since the cement foundation extended three feet on each side of the center line.

 Counsel for defendant city argue that plaintiff may not maintain the action, for failure to comply with the requirements of the city charter of Pasadena in the matter of filing the claims against the city. In answer plaintiff contends that the act of the legislature of 1931, with the terms of which she complied, governs the situation and that in any event she did in fact make substantial compliance with the

requirements of the city charter. Both of plaintiff's contentions must be sustained.

When it was enacted in 1923 the Public Liability Act made no provision regulating the time for filing claims against the various political units which were thereby made liable for the maintenance of dangerous or defective conditions. In 1931 the legislature enacted chapter 1167 and in section 1 it is provided: "Whenever it is claimed that any person has been injured or any property damaged as a result of the dangerous or defective condition of any public street, highway, building, park, grounds, works or property, a verified claim for damages shall be presented in writing and filed with the clerk or secretary of the legislative body of the municipality, county, city and county, or school district, as the case may be, within ninety days after such accident has occurred. Such claim shall specify the name and address of the claimant, the date and place of the accident and the extent of the injuries or damages received." (Stats. 1931, p. 2475.) It has been held in many decisions that the regulation of traffic upon the streets of the city is not a municipal affair. (*Key System Transit Co.* v. *City of Oakland,* 124 Cal. App. 733, 742 [13 Pac. (2d) 979]; *Ex parte Daniels,* 183 Cal. 636 [192 Pac. 442, 21 A. L. R. 1172].) In *Douglass* v. *City of Los Angeles,* 5 Cal. (2d) 128 [53 Pac. (2d) 353], it is stated: "The important question of the liability of municipalities, counties and school districts for the tortious acts or omissions of their servants is a matter of general state concern, and not, as contended by the plaintiff, a municipal affair. As this point is now regularly raised we confirm the 'foreword' stated by this court in *Rafferty* v. *City of Marysville,* 207 Cal. 657 [280 Pac. 118], that it would be an anomalous situation if a city could, by adopting a freeholders' charter, exclude itself from the operation of a general law of the state imposing a liability on municipalities generally for the negligent acts or omissions of its servants in the maintenance of the public streets, on the theory that such city is independent of general laws in municipal affairs. The question of the safety of public ways is 'a matter of state concern, and the obligation of a city to make its highways reasonably safe for general use cannot be chartered away even though a municipality should attempt to do so' ". Since the legislature has power to make regulations covering matters of state concern, as it

did in enacting the Public Liability Act of 1923, it also has power to regulate the manner in which the rights given by the Public Liability Act may be enforced. This it did when it provided in 1931 that a verified claim should be presented to the clerk of the legislative body of the municipality within ninety days after the accident. (*Johnson* v. *City of Glendale,* 12 Cal. App. (2d) 289 [55 Sup. Ct. 580].)

In *White-Satra* v. *City of Los Angeles,* 14 Cal. App. (2d) 688 [58 Pac. (2d) 933], the plaintiff commenced an action for damages based upon the provisions of the Public Liability Act of 1923 but did not file a verified claim within the time set by the act of 1931. In declaring that the plaintiff was barred for noncompliance with the statutory provision the court referred to section 376 of the charter of the city of Los Angeles which provides that "except in those cases where a shorter period of time is otherwise provided by law, all claims for damages against the city must be presented within six months after the occurrence from which the damages arose". The court stated: "Perusal of the foregoing provisions of the city charter and general laws demonstrates that the ninety days' period controls in the filing of claims such as the one here in question, . . . " It is to be noted that the provisions of the charter of Pasadena are practically identical with the provisions contained in section 376 of the charter of the City of Los Angeles: "Except in those cases where a shorter period of time is otherwise specified by law all claims for damages against the City, or any department thereof, must be presented within six months after the occurrence . . . ". (Charter of City of Pasadena, art. XI, sec. 12.)

Even under the view of defendant city's counsel that the charter provisions prevail on this point, plaintiff has shown by her complaint that she made substantial compliance with the requirements of the charter in the matter of the presentation of claims. It is provided in section 1 of article II of the charter of Pasadena that "Every demand shall be presented to the city controller and shall be numbered by him". In section 12 of article XI it is provided in part: "Any claim rejected in whole or in part by the City Controller or other officer except the legislative body of the city whose approval may be required, may be presented to the legislative body of the city within thirty (30) days after

such rejection, and must be so presented before the bringing of any suit against said city or any officer, board or department thereof in his or its official capacity, and suit on any claim shall be brought within six months after the rejection of such claim in whole or in part by such legislative body". It is alleged in the complaint that plaintiff filed her verified claim in duplicate with the city clerk of Pasadena and with the city controller of Pasadena. It is further alleged: "That plaintiff was informed on or about the 31st day of March, 1937, by said Bessie Chamberlain, said city clerk of Pasadena, that her claim was presented to the board of directors of the City of Pasadena and had been referred to the city attorney of Pasadena. That said claim was rejected by the city of Pasadena. That on or about the 21st day of May, 1937, plaintiff was informed by the defendant, city of Pasadena, that on May 18, 1937, the defendant, city of Pasadena, had denied and rejected said claim in whole. That a copy of this notice is attached hereto, marked exhibit A and by this reference made a part hereof with like force and effect as if herein set forth in full." Exhibit A is a letter dated May 21, 1937, addressed to plaintiff and signed by the city controller in which it is stated that the city manager of Pasadena after careful investigation had rejected the claim.

The purpose of filing a claim against the city is to enable city officials to make proper investigation concerning the merits of the claim and to settle it without the expense of a lawsuit if settlement should be shown to be proper. In the absence of an intention to mislead, a substantial compliance with the charter requirement is sufficient. In *Uttley* v. *City of Santa Ana,* 136 Cal. App. 23 [28 Pac. (2d) 377], the court quoted with approval from *Wagner* v. *City of Seattle,* 84 Wash. 275 [146 Pac. 621, Ann. Cas. 1916E, 720] : "When, therefore, there is no evident intention to mislead, but a *bona fide* attempt to comply with the law, the notice is sufficient in the absence of any evidence that it did in fact mislead". The court further stated : "The general rule with respect to this sort of notice of claim is that a substantial compliance with the provisions of ·the statute is sufficient. (19 R. C. L. 1044.) " Plaintiff did in effect present her claim to the legislative body of the City of Pasadena when she filed it with the city clerk. In *Douglass* v. *City of Los Angeles, supra,* it was held that a claim filed with the city clerk should be

deemed to be presented to the city council. She also filed her claim with the city controller. It is argued that her claim should have been filed with the legislative body within thirty days after its rejection by the city controller and that the filing of the claim in duplicate at the same time with the clerk and controller does not satisfy the charter requirement and therefore bars the filing of the action in court. It cannot reasonably be argued that defendant city was not given full opportunity to investigate the merits of the claim. The matter was referred to the city attorney and "carefully investigated" by the city manager. The city was not misled or prejudiced in any manner by the method pursued by plaintiff in filing her claim.

The judgment is reversed and the trial court directed to overrule the demurrer.

A petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on October 20, 1938.