[L. A. No. 19746. In Bank. Feb. 14, 1947.]

ETHEL EASTLICK, Respondent, v. CITY OF LOS ANGELES, Appellant.

Ray L. Chesebro, City Attorney, Arthur W. Nordstrom, Assistant City Attorney, and Leonard Husar, Deputy City Attorney, for Appellant.

Kenneth Sperry and Houser & Houser for Respondent.

SPENCE, J.—Defendant city of Los Angeles appeals from a judgment entered upon a verdict of $5,000 in favor of plaintiff for personal injuries sustained when she tripped and fell on a broken sidewalk within defendant's territorial limits.

The accident occurred on Cannery Street, Terminal Island, in the Harbor District of the city of Los Angeles. Cannery Street extends east and west and is 100 feet wide between property lines. It is intersected by Tuna Street, which extends north and south and is 40 feet wide. The condition of the sidewalk of Cannery Street, which was alleged to have been dangerous and to have caused plaintiff to fall, consisted of a break in the cement so that part of the pavement overlapped and projected three to four inches above the adjoining surface. This raised irregularity extended across the entire width of the sidewalk.

Plaintiff was employed in the Fisherman's Cafe, located on the east side of Tuna Street about one-half block south of Cannery Street. At about 7:30 p. m., October 27, 1943, at the conclusion of her day's overtime work, she left the cafe, walked northerly on the east side of Tuna Street, crossed the intersection of Cannery Street to the northwest corner and proceeded westerly on the sidewalk, some three to five feet wide, along the north side of Cannery Street. It was dark at the time and the spot where plaintiff fell—approximately in the middle of the block—was somewhat shaded by a fence that was in the course of construction along the north curb line of Cannery Street. A street light, located about 90 feet south of the break in the sidewalk and on the other side of the newly erected fence, was burning at the time in question. Plaintiff filed her verified claim with the city of Los Angeles. Upon its rejection, she instituted the present suit and recovered damages for the personal injuries sustained.

Defendant unavailingly presents the following points as grounds for reversal of the judgment: (1) That the claim filed by plaintiff was defective because it failed to state separately and itemize the several elements of damage, and to set forth the total amount of the demand, as required by the city charter; (2) that defendant city was under no duty to keep the sidewalk where plaintiff fell in a reasonably safe condition because it had no jurisdiction over that area; (3) that there was prejudicial error in the giving and refusal of instructions affecting, respectively, the matter of defendant's liability and the damages recoverable; and (4) that plaintiff was guilty of contributory negligence as a matter of law.

Plaintiff's action is based upon the Public Liability Act of 1923, imposing liability upon a municipality for injury to persons and property resulting from the dangerous or defective condition of public streets, highways, buildings, works and property. (Stats. 1923, p. 675; Deering's Gen. Laws, 1937, Act 5619, p. 2630.) Supplementary to this act is the claim statute of 1931, requiring that "a verified claim for damages shall be presented in writting and filed with the clerk or secretary of the legislative body of the municipality . . . within ninety days after [the] accident . . . [and that] such claim shall specify the name and address of the claimant, the date and place of the accident and the extent of the injuries or damages received." (Stats. 1931, p. 2475; Deering's Gen. Laws, 1937, Act 5149, § 1, p. 2204; *Johnson* v. *City of Glendale,* 12 Cal.App.2d 389, 393 [55 P.2d 580].) Plaintiff's claim was made on a form of demand furnished by defendant and was duly verified. It stated her name and address, the date and place of the accident, and it itemized sums paid on account of doctors' and nurses' bills and charges for rent of a splint, in the total amount of $35. These payments were listed as made on October 30, 1943; the claim was filed November 16, 1943. In answer to the question, "How did damage or injury occur? Give full particulars" the claim stated, "walking to Ferry Bldg. from work (at Fisherman's Cafe), tripped on broken place in sidewalk and fell fracturing leg at knee joint." In answer to the question, "What damage or injuries do you claim resulted? Give full extent of injuries or damage claimed" the claim stated, "fractured leg at knee joint with the possibility of a stiff knee." In answer to the question, "What sum do you claim on account of each item of

injury or damage?" the claim stated, "wages lost, Dr. fees, X-ray pictures, rent for splint and nurses wages."

Plaintiff's claim concededly was complete as measured by the requirements of the state law. But its sufficiency as a demand against defendant is challenged upon the basis of several sections of the charter, the essentials of which are summarized in section 368, which reads: "No demand can be approved by any board, officer or employee, or be audited, unless it specify each several item, with the date and amount thereof." Section 376, in part, provides: "No suit shall be brought on any claim for money or damages against the City of Los Angeles, or any officer or board of the city, until a demand for the same has been presented, as herein provided, and rejected in whole or in part." Defendant argues that a demand is not presented within the meaning of section 376 of the charter unless it specifies each separate item of damage, with the date and amount thereof. From this premise defendant advances the further proposition that at most plaintiff's claim, filed as a condition precedent to the maintenance of suit, would authorize a damage recovery of but $35, the total amount of her itemized demand. In fact, upon this theory defendant in the trial court, at the close of plaintiff's case, moved for a directed verdict against it to the extent of said sum; that motion was denied.

In attacking plaintiff's statement of her cause of action defendant does not dispute the following settled propositions: (1) That a city, by adopting a charter, becomes independent of general laws only as to "municipal affairs," and that in matters of general statewide concern the general law is paramount (Const., art XI, §§ 6, 8; *City of Pasadena* v. *Charleville,* 215 Cal. 384, 388 [10 P.2d 745] ; *West Coast Adver. Co.* v. *San Francisco,* 14 Cal.2d 516, 519 [95 P.2d 138]) ; (2) that the existence of a municipality's liability for the dangerous or defective condition of its streets is a matter of state concern (*Rafferty* v. *City of Marysville,* 207 Cal. 657, 665 [280 P. 118] ; *Douglass* v. *City of Los Angeles,* 5 Cal.2d 123, 128 [53 P.2d 353] ; and (3) that with regard to such a matter local regulations may be enforced only if they are not in conflict with the general law. (*White-Satra* v. *City of Los Angeles,* 14 Cal.App.2d 688, 689 [58 P.2d 933] ; *Sandstoe* v. *Atchison, Topeka & Santa Fe Ry. Co.,* 28 Cal.App.2d 215, 220 [82 P.2d 216] ; *Wilkes* v. *City and County of San Francisco,* 44 Cal.

App.2d 393, 396 [112 P.2d 759]; *Helbach* v. *City of Long Beach*, 50 Cal.App.2d 242, 247 [123 P.2d 62].) However, defendant contends that its charter provision as to itemization of damages is merely supplementary to the general law—an additional, not a contrary requirement—and therefore is valid. As authority for this position, defendant cites such cases as *In re Iverson*, 199 Cal. 582 [250 P. 681]; *In re Simmons*, 199 Cal. 590 [250 P. 684]; and *Natural Milk Producers Assn.* v. *San Francisco*, 20 Cal.2d 101 [124 P.2d 25]. But these cases concerned local prohibitory enactments adopted, in the municipality's exercise of the police power, in a field where the applicable state law contained language expressly indicating that the Legislature did not intend its regulations to be exclusive. (See *Pipoly* v. *Benson*, 20 Cal.2d 366, 371 [125 P.2d 482, 147 A.L.R. 515].) "Whether the legislature has undertaken to occupy exclusively a given field of legislation," so that a local regulation imposing a higher standard of conduct with regard to the subject covered would necessarily be in conflict, "is, we think, to be determined in every case upon an analysis of the statute and of the facts and circumstances upon which it was intended to operate." (*Mann* v. *Scott*, 180 Cal. 550, 557-558 [182 P. 281].)

Since the Legislature has power to make regulations covering matters of state concern, as it did in enacting the Public Liability Act of 1923, it also has power to regulate the manner in which the rights given by said act may be enforced. This it did when it provided, in 1931, a general scheme for the presentation of such liability claims to be effective throughout the state. While matters not thereby covered in connection with the prosecution of such claims "must be governed by other existing statutes" (*Hennessy* v. *County of San Bernardino*, 47 Cal.App.2d 183, 186 [117 P.2d 745]; see, also, *Thompson* v. *County of Los Angeles*, 140 Cal.App. 73, 75 [35 P.2d 185]), with respect to the subjects covered, the 1931 statute occupies the entire field and it impliedly precludes control to that extent by municipal or local regulation. Thus, a municipality may not curtail or abridge the rights so granted by specifying, through charter provision, a shorter time limitation for the filing of such claims than the period fixed by the statute. (*Kelso* v. *Board of Education*, 42 Cal.App.2d 415, 418 [109 P.2d 29]; see, also, *Wilkes* v. *City and County of San Francisco*, *supra*, 44 Cal.App.2d 393, 395-396.) If a

municipality may not impose more onerous conditions affecting the filing period allowed a claimant under the general law, it would reasonably follow that it may not impose more onerous conditions affecting any other matter covered by the statute, such as the contents of the claim. ■ So with the point here involved, the statute requires the claimant to specify only "the extent of the injuries or damages received." The charter's provision that the claim itemize the several elements of damage and set forth the total demand is manifestly a more burdensome condition of recital as to the matter of damages than the requirement of the statute. Such charter provision is necessarily inconsistent with the general form of claim presentation adopted by the Legislature for operation throughout the state. As so analyzed, the present case is wholly distinct from the situation in *Mann* v. *Scott, supra,* 180 Cal. 550, 556, where a local police regulation, affecting the control of traffic on the city streets and imposing a stricter requirement than did the Motor Vehicle Act at the time in question, was sustained as "in aid and furtherance of the purpose of the general law . . . fit and appropriate to the necessities of the particular locality." No considerations with respect to the city's exercise of its police power enter here.

Defendant unavailingly argues that its auditing practice and procedure under its charter require the itemization of damages and the recital of the total demand as prerequisite to the allowance of a claim. Unquestionably, "the purpose of filing a claim against the city is to enable city officials to make proper investigation concerning the merits of the claim and to settle it without the expense of a lawsuit if settlement should be shown to be proper." (*Sandstoe* v. *Atchison, Topeka & Santa Fe Ry. Co., supra,* 28 Cal.App.2d 215, 223.) Such purpose is fulfilled by a claim containing the facts required by the claim statute of 1931. Additional details affecting defendant's auditing regulations are matters of internal business which cannot burden the standard form of claim required of a claimant seeking redress in pursuance of his statutory right under the Public Liability Act. Citation of the cases of *Western Salt Co.* v. *City of San Diego,* 181 Cal. 696 [186 P. 345], and *Crescent Wharf Co.* v. *City of Los Angeles,* 207 Cal. 430 [278 P. 1028], is of no assistance to defendant. They merely hold that a municipality may adopt a charter provision regulating the presentation of claims and the terms thereof are applicable to a cause of action against

the city where "there is no general law upon the subject." Neither these cases nor those of *Cathey* v. *City and County of San Francisco*, 37 Cal.App.2d 575 [99 P.2d 1109], and *Chilberg* v. *City of Los Angeles*, 54 Cal.App.2d 99 [128 P.2d 693], also cited by defendant on the point of required compliance with a city's claim provision, involved a cause of action based upon the Public Liability Act. (Cf. *Wilkes* v. *City and County of San Francisco, supra,* 44 Cal.App.2d 393, 398.) Nor does defendant's citation of the case of *Huey* v. *City of Los Angeles,* 137 Cal.App. 48 [29 P.2d 918], fortify its position here. The cause of action there arose before the enactment of the claim statute of 1931 regulating the manner of presenting claims under the Public Liability Act, and consequently the city charter provision, requiring specification of the amount demanded or claimed, governed in the absence of a "general law upon the subject." But since the enactment of the claim statute of 1931, the provisions of that statute "are exclusive" in regulating the presentation of claims arising under the Public Liability Act, and no city charter provisions relating to the presentation of claims, whether adopted before or after the effective date of the statute, are applicable within the field covered thereby. (*Wilkes* v. *City and County of San Francisco, supra,* 44 Cal. App.2d 393, 397; see, also, *Helbach* v. *City of Long Beach, supra,* 50 Cal.App.2d 242, 247.)

 For its second ground of objection to the judgment, defendant attacks the sufficiency of the record to establish its jurisdiction over the place of the accident at the time in question. Thus, defendant argues that there was no evidence that the sidewalk where plaintiff tripped and fell was under the possession, control, or management of the city, or that the city was under any duty to keep said sidewalk in a reasonably safe condition. This argument is premised upon certain fragmentary evidence with respect to the activities of the United States Navy in the Terminal Island area since December 7, 1941, incident to this country's entry into war.

Terminal Island is the land which forms the southerly and easterly boundary of Los Angeles Harbor. The particular section of the island in question was formerly used by commercial fishermen, particularly the Japanese. As appears from testimony at the trial, the Navy "took over" Terminal Island on December 7, 1941. It took exclusive possession of some sections and excluded the public therefrom; it also took

control of all travel to and from the island and required civilians passing to and from the island to obtain and carry permits issued by the Navy; it stationed guards at different points, one of them located at the northeast corner of Tuna and Cannery Streets. Plaintiff carried a pass which she regularly exhibited upon entering or leaving the island. She came across the channel from San Pedro by ferry and was accustomed to use the sidewalk in question in going to and from her place of work. Persons lawfully on the island made free use of this sidewalk, without interference or objection by the Navy. It was not closed to such use and travel at any time. From and after December 7, 1941, the city discontinued inspection and supervision of the sidewalk in question, and of streets and sidewalks generally in the areas where the Navy carried on its activities. There was no evidence of any agreement with the Navy upon the subject or that the Navy ever undertook or ever did any repair work on the streets or sidewalks. Two days prior to the date of plaintiff's accident, the Navy commenced the erection of a board fence along the northerly curb line of Cannery Street. By the time of the evening in question, the construction had progressed easterly to a point slightly beyond the place where plaintiff fell. The fence was built of boards about five feet high, some four to six inches wide, spaced two or more inches apart. The sidewalk was left open at the intersecting streets, and the fence was not intended to and did not bar or interfere with travel on the sidewalk. On each side of the fence was fastened a sign, "Property of United States Navy."

There is nothing in this state of facts which would have relieved the city of its duty and responsibility to keep the sidewalk in repair. The failure to inspect it and repair it was an act of voluntary omission on the part of the city and did not result from any necessity based upon the precautionary measures that were being taken by the Navy to guard the island and control the activities of the people thereon. No particular significance attaches to the Navy's erection and signposting of the fence as its property, for such action might reasonably be viewed as but a part of its street patrol program on the island; the general use of the abutting sidewalk was in nowise affected.

Nor is defendant's position aided by reference to the record's showing that in June, 1943—some four months prior to the date of plaintiff's accident—the United States Govern-

ment commenced an action to condemn some interest in the land abutting on Cannery Street to the north of that street and west of Tuna Street, as well as certain parcels in other sections of Terminal Island. The condemnation proceeding presumably was undertaken in pursuance of the Navy's entry into possession of those parts of the island. The nature of the interest, thus sought to be acquired, does not appear. Apparently a decree of some sort had been entered in the proceeding, with which counsel herein were familiar, but no copy of it was introduced in evidence nor were its terms otherwise proved or agreed upon. Defendant argues that title to the land adjoining Cannery Street on the north, and including the sidewalk in question, which was a part of the street, and the exclusive right to the possession and use thereof, had passed from the city to the United States Government. This argument finds no support in the record.

Although the answer of defendant denied that Cannery Street was a public street in the city of Los Angeles, there was ample evidence at the trial that it was plotted and constructed by the city and had been used as a public thoroughfare from the time the street was improved and the sidewalk was built in 1924 to a date subsequent to October 27, 1943. It was not questioned at the trial, nor is it questioned here, that Cannery Street was so used for many years and that the sidewalk was a part of it. There is no showing in the record that title or the right to possession and use of the sidewalk passed from the public to the United States Government at any time, so as to relieve the city of the duty of inspection and maintenance.

A map, in evidence, prepared by the Harbor Department at the time of said street construction on the island in 1924, shows Cannery Street, according to scale, to be 100 feet wide, inclusive of the sidewalk. To be correlated with this is another map in evidence, bearing the signature of the Harbor Engineer under date "6-4-42" and showing a corresponding delineation of the streets in question as well as the areas designated "Property of United States Navy." Cannery Street, as shown on this latter map, was scaled by one of the witnesses and he testified that the width was 100 feet. While this map does not show the sidewalk separately, there was testimony that the sidewalk in question was included in the 100-foot width of Cannery Street. It is also shown by said map that the area in possession of the Navy did not include the sidewalk

but extended only to the border of Cannery Street at its 100-foot extremity. There is no evidence that the later condemnation proceeding affected Cannery Street or the sidewalk in question. In such circumstances that proceeding, and the Navy's taking possession thereunder of the area north of the sidewalk, did not interfere with the use of the sidewalk by the public or relieve the city of its duty to maintain it in a reasonably safe condition for public travel. Contrary to defendant's position, no boundary significance may be assigned under the record to the Navy's location of its fence along the northerly curb line of Cannery Street, bordering the sidewalk but in nowise interfering with its general use by the public.

For its third ground of objection, defendant challenges the propriety of the giving and refusal of certain instructions. Because of its relation to the question of the city's continued responsibility for the maintenance of the streets on Terminal Island, the first point to be noted will be defendant's attack upon the court's giving of the following instruction: "Under date of December 12, 1941, the President of the United States, by Executive Order No. 8972, made provision for the establishment and maintenance of military guards and patrols for the purpose of protecting from injury or destruction any national defense material and utilities. The mere fact that such guards and patrols may have been maintained by the military authorities did not relieve the defendant, City of Los Angeles, a municipal corporation, its officers or boards, from the duty of maintaining the public streets and sidewalks within its territorial boundaries, including its Harbor Department, in a reasonably safe condition." Defendant argues that the instruction was upon matters not in evidence and only served to confuse the jury as to the import of the Navy's activities on Terminal Island. An examination of the record refutes defendant's position and establishes the need for some such clarification on the matter. Defendant had made repeated claims during the trial that the Navy had entered upon Terminal Island by taking exclusive possession of sections of it and by guarding the remainder. In cross-examining plaintiff, counsel for defendant exhibited to her a photograph and read therefrom the inscription on a sign, "Terminal Island is under Navy Jurisdiction by Presidential Executive Order. (Signed) Commander . . ." and plaintiff was asked whether she saw such a sign at the en-

trance to the ferry as she traveled to and from the island. An objection was sustained but the question was immediately repeated and plaintiff responded that she did not remember. Thus, the existence of such a sign was disclosed to the jury in this indirect manner. Moreover, the Harbor Engineer, called as a witness for plaintiff, testified that he had written on a map which was used in evidence such statements as "Sign on Fence, 'Property of U. S. Navy,' Sign on Building, 'Warning, Federal Government Property, No Trespassing Under Penalty of Law.'" He testified that he had done this because such signs were on the property. Several times in the course of his testimony this witness took occasion to observe that the property was "under the jurisdiction of the United States Navy" and that "the United States Navy assumed jurisdiction of that area." Although there was no evidence as to the terms of Executive Order No. 8972, sufficient mention had been made of it as to render proper some appropriate instruction to the jury, and the instruction in question was a correct statement of the law. (Cf. *Bosqui* v. *City of San Bernardino*, 2 Cal.2d 747, 758-760 [43 P.2d 547]; *Shea* v. *City of San Bernardino*, 7 Cal.2d 688, 693 [62 P.2d 365].)

The next point to be noted in this regard is defendant's claim of error upon the court's refusal of the following instruction: "If you believe that the erection of the fence along the southerly side of the sidewalk made the condition of the sidewalk, where plaintiff fell, dangerous because it rendered the condition difficult to see, before plaintiff can recover in this case she must prove to your satisfaction that the City of Los Angeles or the Board of Harbor Commissioners of the City of Los Angeles had knowledge of such fact, and that after acquiring such knowledge, the City or the Board failed within a reasonable time to protect the public against it." The instruction was properly refused because it does not correctly reflect the factual considerations entering into the determination of the city's liability. The broken condition of the sidewalk consisted in a three to four-inch overlapping of the cement above the adjoining surface. There was testimony that this condition had existed for at least two years prior to plaintiff's accident. Whether such break in the sidewalk created a dangerous condition and whether the city was chargeable with notice of its existence were questions of fact for the jury to resolve. (*George* v. *City of Los Angeles*, 11 Cal.2d 303, 308 [79 P.2d 723]; *Bauman* v. *City and County*

*of San Francisco,* 42 Cal.App.2d 144, 157 [108 P.2d 989] ; *Lorraine* v. *City of Los Angeles,* 55 Cal.App.2d 27, 30-31 [130 P.2d 140] ; *Sheldon* v. *City of Los Angeles,* 55 Cal.App. 2d 690, 693 [131 P.2d 874].) An added factor entering into the scene of plaintiff's fall was the Navy's erection of the fence casting a shadow over the sidewalk in question. Under these combined circumstances the effect of the construction of the fence as a concurring act in relation to the question of proximate cause was also for the jury to determine. (*Bauman* v. *City and County of San Francisco, supra,* 42 Cal.App. 2d 144, 154.) Yet by its proposed instruction, defendant would restrict the jury to a finding that the condition of the sidewalk was dangerous only because it was somewhat shaded by the fence and would predicate the city's liability wholly on proof of its knowledge of the added hazard. Pertinent to defendant's position is the discussion of the point in *Bosqui* v. *City of San Bernardino, supra,* 2 Cal.2d 747, at page 764 : "The defendant City suggests that the Public Liability Act does not apply where the defective condition of the street or highway concurs with some other efficient cause or act of a third person to cause the injury. . . . In our opinion, *where the thing exists which is denounced by the statute, namely, the neglect to remedy a dangerous or defective condition after knowledge thereof, and it proximately causes the injury, the City is liable under the clear meaning of the law despite the existence of another and concurring cause.*" (Emphasis added.) (See, also, *Sandstoe* v. *Atchison, Topeka & Santa Fe Ry. Co., supra,* 28 Cal.App.2d 215, 219-220.) The cases of *Nicholson* v. *City of Los Angeles,* 5 Cal.2d 361 [54 P.2d 725], and *Whiting* v. *City of National City,* 9 Cal.2d 163 [69 P.2d 990], have no application here in relation to the establishment of defendant's liability, where it cannot be said that the break in the sidewalk was a minor or trivial defect as a matter of law. (*Balkwill* v. *City of Stockton,* 50 Cal.App.2d 661, 669 [123 P.2d 596] ; *Sheldon* v. *City of Los Angeles, supra,* 55 Cal.App.2d 690, 693-694.)

██ Defendant's third point of challenge to be here noted is its objection to the trial court's giving of the following instruction: "The amount of damages alleged in the complaint to have been suffered by plaintiff is $8,895.00. This allegation is merely a claim and is not evidence and must not be considered by you as evidence. It does, however, fix a

maximum limit and you are not permitted to award plaintiff more than that amount." Defendant points out that the complaint, upon amendment at the trial to conform with the proof, alleged items of damage to the aggregate sum of $7,385 —general damages in the amount of $5,000 and special damages in the amount of $2,385—but that the prayer, as amended, was changed to $8,895. While not objecting to the propriety of advising the jury as to the amount demanded in the complaint, defendant maintains that the amount so stated should have been the total sum of the items of alleged damages rather than the inflated figure of the prayer. Regardless of the merit of defendant's objection, which properly should have been made in the trial court so that the discrepancy could have been there obviated (*Lahti* v. *McMenamin*, 204 Cal. 415, 421 [268 P. 644]), no harm appears to have resulted from the inaccuracy in the instruction. The verdict was for $5,000, well within the figure conceded by defendant to represent the limit of plaintiff's total demand.

Defendant's final point as ground for reversal is the claim that plaintiff was guilty of contributory negligence as a matter of law. Plaintiff testified that at the point where she fell, "one piece of the sidewalk overlapped the other . . . about three inches"; that this condition extended "the entire width of the sidewalk"; that she had been working on Terminal Island "about five months," had "stepped over [the broken section] twice a day"; that she did not see the break nor have it in mind just before she fell, and that the newly erected fence cast shadows, although she was not at the time aware of the change that this made in the lighting conditions. This testimony would not establish as a matter of law that plaintiff was guilty of contributory negligence. The boards of the fence were spaced two inches or more apart. Such shadows as were cast would have alternated with strips of light; plaintiff had not previously passed along the sidewalk under these conditions, lessening the illumination shed over the area by the street light some 90 feet distant. Plaintiff explained that she came upon the break in the sidewalk before she expected and without realizing that the changed conditions, due to the construction of the fence, decreased the visibility of the break. These facts would allow reasonable differences of opinion as to whether plaintiff's failure to see the break under the new and unfamiliar conditions was a failure to exercise ordinary care for her own safety. The jury

determined the question adversely to defendant; its conclusion will not be disturbed on appeal. (See *Moore* v. *Marshall*, 41 Cal.App.2d 490, 494 [107 P.2d 89].)

The judgment is affirmed.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., Traynor, J., and Schauer, J., concurred.